LUCY A. WIGHT, APPELLEE, V. JENNIE A. MCGUIGAN ET
AL., APPELLANTS.

FILED SEPTEMBER 26, 1913.   No. 17,117.

1. **Tax Sale.** When real estate is sold for taxes, all delinquent taxes thereon must be included in the sale.

2. ————: PRIVATE SALE. Real estate cannot be sold for taxes at private sale unless all taxes thereon then delinquent have been included in the notice of public sale, and the land has been duly offered at such public sale and not sold for want of bidders.

3. ————: INVALID SALE: INTEREST ACQUIRED. A purchaser of land in good faith at private sale for taxes takes the interest of the public in the tax lien when the sale is invalid without fault of such purchaser.

4. **Waters:** IRRIGATION DISTRICT: NONIRRIGABLE LAND: TAXATION. The statute (laws 1895, ch. 70, sec. 49) provides that no land that for any natural cause is incapable of irrigation shall be held by any irrigation district or taxed for irrigation purposes. A tract of land, being a government subdivision or other well-defined tract, ought not to be included in an irrigation district if it is for natural causes incapable of irrigation, but the fact that there are comparatively small knolls or sloughs thereon will not necessarily exclude the tract, and under such circumstances the tract, if included, should be. assessed as a whole.

5. ————: ————: TAXATION: VALIDITY. If the district board neglects to levy a tax for costs of organization and payment of outstanding bonds, the county board may levy such tax on the general assessment. The district board alone can equalize the assessment and levy a tax for the general purposes of the district. A tax levied by the county board for such general purposes of the district would be void. If a part of the levy is void a sale thereon would be voidable.

6. **Taxation:** INVALID SALE: INTEREST ACQUIRED. A sale for taxes, although irregular and voidable, will operate to assign the lien of the public.

7. **Waters:** IRRIGATION DISTRICT: TAXATION: PRESUMPTIONS. Section 16, ch. 70, laws 1895, prescribes the form of assessment by the district assessor; when it appears that these provisions have been substantially complied with and the district board has reviewed the assessment and that a levy was made thereon, it will be presumed that the district board made such levy and that the proceedings were regular, in an action by the landowner to cancel the tax, unless the official records or other satisfactory evidence shows that the district board did not levy the tax.

8. ——: ——: ——: VALIDITY. From the evidence in this case it is found that the assessment and levy for certain specified years were sufficiently regular to create a lien for the tax so levied, and for other specified years there was no valid levy.

APPEAL from the district court for Custer county: BRUNO O. HOSTETLER, JUDGE. *Reversed with directions.*

*Sullivan & Squires,* for appellants.

*Silas A. Holcomb, Willis Cadwell, E. F. Myers* and *C. L. Gutterson, contra.*

SEDGWICK, J.

Plaintiff brought this action in the district court for Custer county to foreclose the lien of a tax sale certificate. The sale was for general taxes and for taxes alleged to be levied by the Lillian Irrigation District. Defendants, the owners of the land, tendered the general taxes, and refused to pay the taxes for the irrigation district. The trial court found that plaintiff was entitled to a lien for the general taxes assessed against the land and for the principal part of the taxes assessed for the irrigation district, rejecting a few items of the latter. The defendants have appealed.

The answer filed by defendants is very voluminous; many of its allegations appear to be conclusions only; and it contains some generalities and repetitions. The abstract is incomplete and the record is very improperly

indexed. The public record introduced in evidence has
been inaccurately made and carelessly preserved. We will
necessarily be limited to a consideration of some of the
leading principles of law that appear to be involved.

1. Objection was made to the introduction of evidence
as to the assessment of property and levy of taxes in the
alleged irrigation district because the existence of the dis-
trict was denied and had not been proved. It has pre-
viously been declared by this court that an irrigation
district properly organized under the statute is a public
corporation. It is a political subdivision of the state, and
is formed, not by an act of the legislature as counties and
judicial districts are formed, but is more analogous in that
regard to villages and school districts. The courts take
judicial notice of the existence of municipal subdivisions
of the state which are formed by legislative enactment, as
by a special act of the legislature under the first consti-
tution. *Hornberger v. State,* 47 Neb. 40. In *Agnew v.
Pawnee City,* 79 Neb. 603, it is stated in the third para-
graph of the syllabus: "The courts will take judicial
notice of the fact that a city is an incorporated city, of the
time when it was incorporated, and of the salient facts of
its geography and history." That proposition is not dis-
cussed in the opinion, and so broad a statement was not
necessary to a decision in that case. It was only necessary
to hold that, when it is conceded that a city is incorpo-
rated, and a recorded plat of the city is in evidence upon
which streets of the city are shown, the court will take
judicial notice that the streets of cities so organized are
public streets, and of the nature of the title and right of
the city therein. Whether the courts in this state will
take judicial notice of the existence of a village or an
irrigation district, not created by public law, but by the
county board of the county in which it is located, when
the existence of such corporation is directly put in issue
in an appropriate proceeding for that purpose, was not
determined by the court in that case. In the case at bar,
however, a copy of the history of the bonds issued by the

district was received in evidence with the consent of all parties; the defendants waiving all objection thereto, except that the facts therein recited were incompetent and immaterial. This document recited the facts in regard to the organization of the district, and there was no evidence offered modifying or explaining the facts therein recited. The trial court did not make any finding as to the existence of the district, nor was it asked to do so; all parties apparently assuming that the said recital of the facts of organization was correct. We think the defendants should be held to have waived this objection.

2. It is contended that the sale upon which the tax certificate in suit was issued was invalid because no private sale for taxes upon real estate can be made at the time that this sale was attempted. The statute then in force was the public revenue law of 1903 (laws 1903, ch. 73). By section 150 of the act real estate taxes became delinquent on the 1st day of May of the year after which the taxes have been assessed, and bear interest from that date at the rate of 10 per cent. per annum. By section 206 private sales may be made after the lands have been offered at public sale and the treasurer has made his return thereof to the county clerk. The public sale, by section 194, must be for "the amount of all delinquent taxes against each tract, with interest thereon to the date of sale," and the purchaser at a private sale must, of course, pay for each tract purchased all the delinquent taxes against the same. The sale was made on the 5th day of October, 1905, and was for the taxes assessed in 1903 and prior taxes. It did not include the taxes assessed in 1904, which became delinquent in May, 1905. It could not, of course, include the taxes assessed in 1904 because no public sale therefor could be made prior to the first Monday of November, 1905. No sale for taxes can be made without including all the delinquent taxes in the sale, and no taxes can be included in the private sale unless the land has been offered for those taxes at public sale. It follows necessarily that real estate cannot be sold

at private sale while there are delinquent taxes against the same for which the land has not been offered at public sale. The certificate is therefore invalid, but the purchaser is entitled to recover, as assignee of the public, the amount of the valid taxes, if any, included in the sale, and all prior and subsequent valid tax liens paid by her as such purchaser, with interest at 10 per cent. from the time of such purchase or payment.

3. The statute (laws 1895, ch. 70, sec. 49) provides that land not capable of irrigation shall not be retained in the district nor taxed. Defendants assume that any considerable piece of land, as a high, sandy ridge running through a tract, must be exempted from taxation, and the assessor seems to have so regarded it. The assessment roll for some years names seven forties (280 acres) as a tract of land to be assessed, and the tract is assessed as containing a much less number of acres. The men who made the assessment. testify that these figures represent the estimated number of acres on which the water could be put. This is not the meaning of the decision in *Andrews v. Lillian Irrigation District*, 66 Neb. 461. If the tract is such as can be watered, the fact that there may be a knoll or slough thereon will not exempt the tract. It is for the board to determine in the first instance whether the tract is so capable as that irrigation would be beneficial to the tract considered in its entirety, and the decision of the board will not be reviewed unless it clearly appears that the tract is such as would not be benefited.

The owner of a specific tract of land ought not to be compelled to join an irrigation district and pay taxes for the support thereof if his land as a whole is so situated that for natural causes it cannot be irrigated. But such a farm cannot be said to be incapable of irrigation because there happens to be a knoll or ridge thereon, comparatively a small part of the farm, that cannot be watered. Such knolls and ridges should be taken into consideration in determining the benefits to the land as a whole by the irrigation works, and also in determining the value of

the land for assessment, and so will reduce the assessment. Such elevated knolls and ridges may be of such comparative importance as that the farm or tract as a whole should be found to be incapable of irrigation. If a government subdivision of land, or a tract otherwise capable of identification and definite description, is incapable of irrigation, and so situated with reference to the proposed district and other lands therein as to make such a course practicable, such tract might be omitted from the district, although it formed a part of a larger tract of the same owner. The idea of including a given farm or tract in the district and then omitting from assessment such knolls or sloughs thereon as the assessor may consider incapable of irrigation is impracticable and not contemplated by the statute.

4. The law requires the district assessor to assess the lands and return the assessment to the district board, and that board must correct the assessment and levy the tax. Unless these provisions were substantially complied with, there could be no valid tax, except for costs of organization and for payment of valid outstanding bonds. So far as this record shows, it should be found that in some years they were and in some they were not complied with. A sale for taxes, although irregular and voidable, would operate to transfer to the purchaser the lien of the public for the valid tax. To this lien must be added subsequent valid taxes paid by the purchaser, and this with interest at 10 per cent. would be the amount of plaintiff's claim.

5. The law provides that, if the district authorities fail to assess and levy, the county board shall levy on the county assessment for irrigation bonds and costs of organization. Plaintiff says these taxes can be sustained under that statute; but that seems impossible because the taxes are for said items and also to raise money to complete the work of the district, and the county could not levy for the latter purpose. If a part of the tax is void the sale would be voidable.

6. If defendants had tendered all taxes due they could

not be charged with interest from the time of the tender; but it seems they did not tender all, because some of the irrigation taxes were a lien and plaintiff is entitled to interest as the county would have been if no sale had been made.

7. The plaintiff can recover in this action the amount of taxes legally assessed and included in her purchase of October 5, 1905, or in the amounts subsequently paid by her for taxes pursuant to that purchase, with interest thereon at 10 per cent. per annum from the time of paying such amounts, respectively. The general taxes are not controverted and were correctly stated by the trial court. To ascertain from this record the validity of the irrigation tax liens so paid is a difficult matter. Section 16 of the district irrigation law (laws 1895, ch. 70) prescribes the form of assessment by the district assessor. In the assessment of farm lands, not under lease and assessed to the owner, there must be included: (1) The name of the person to whom the property is assessed, if known. (2) A description of the land by township, range, section or fractional section, and, when such land is not a congressional division or subdivision, by metes or bounds or other description sufficient to identify it, giving an estimate of the number of acres, locality, and the improvements thereon. (4) Cash value of the real estate. (5) The cash value of the improvements on the real estate. (9) The full value of all property assessed. (10) The total value of all property after the equalization by the board of directors.

The assessments generally, and except as hereinafter stated, were duly certified by the district assessor, and were by the county clerk certified to the county treasurer for collection. In some cases the assessments also show the values found by the district assessor and the values as corrected by the district board of equalization. In such cases we think that, in the absence of satisfactory evidence to the contrary, it ought to be presumed that the board acted thereon at a regular meeting for that purpose, and upon notice, and corrected the assessment and duly levied

the tax, and that the assessment and levy were properly returned to the county clerk. It appears from the assessment rolls that the assessment for 1902 described these lands by government subdivisions of 40-acre tracts, stated the name of the owner to whom the lands were assessed, the valuation placed thereon by the district assessor and the corrected valuation by the district board of equalization, the amount of the tax for the irrigation bonds and the amount of the general irrigation tax, respectively. The defects in this assessment insisted upon are that it described the whole of each of the seven forties as assessed, whereas a part of two of the forties was not included in the irrigation district, and the assessment does not state the value of the land and the improvements thereon separately. The assessment roll shows that the number of acres actually assessed was 154.45, and this was approximately the number of acres in these seven forties that were included in the irrigation district. Of course, no deed issued upon so indefinite a description could be valid. The trial court held that the defendants ought not to be allowed to relieve their land from the lien of a just tax without offering to do equity in the matter, and so determined that this tax was a lien upon the land in favor of the plaintiff. There was much evidence upon this and similar questions, and some records of the various offices tending to identify the lands assessed, and upon the whole record, so far as we are able to understand it, we conclude that the trial court was right in so doing.

The assessments for 1903 and for 1901 are substantially the same, and it was correctly held that the defendants should be required to redeem the same.

In the assessment for 1904 the name of the party to whom the land was assessed was not stated. There is a column in which the total value is stated, but no value is stated in the column for values corrected by the board of equalization. In columns headed "Wheat and Corn" there are values stated which it is contended indicate the tax assessed against the land, but there is no other evi-

dence relating to the tax assessed, except the fact that the figures in some degree correspond with some other assessments. An assessment by the district assessor should be filed with the secretary of the district board and examined and adjusted by that board, and the levy made by them and then certified by the secretary to the county clerk. As we have already said, where the assessment shows a valuation made by the district board, together with the amount of the levy, and there is no evidence to the contrary, we may presume that the law has been complied with in this respect in an action to redeem from the lien of a tax conceded to be just and equitable. Here there is no indication in the record that the supposed assessment was ever in the hands of the secretary of the board or that the board ever considered or saw the assessment. On the contrary, there is evidence tending to show that the district assessor transmitted his proposed assessment directly to the county clerk. We think that the pretended assessment and levy for 1904 are so totally irregular as to be invalid and constitute no lien upon the land.

The assessment for 1898 shows a description of the land by forties; it states that the number of acres assessed is 255.55; states the name of the owner to whom the land was assessed, the amount of the irrigation tax on each forty, and the total amount, and states the value of each forty. The column entitled "Value as corrected by the board of equalization" is not filled, and there is nothing to indicate that the board of equalization ever acted upon this assessment. The same objection obtains to the assessment for 1899.

The assessment for 1905 is the same as for 1902, except that the amount of the bond levy is stated, but not the general levy for irrigation.

1907 describes the land, the name of the party to whom it was assessed, states the total number of acres to be 154.40 acres, states the amount of the bond levy, and the total value of the land. It does not show by whom it was valued, presumably by the district assessor. For 1900 the

name of the owner and description of the land are stated; the total number of acres is stated to be 254.45. The amount of the irrigation tax is stated, and the total value, but the column for correction by the board of equalization is blank. There is nothing in the record, so far as we have observed, to raise the presumption that the tax for either the year 1900 or 1907 was levied by the district board, or that the board ever corrected or saw the work of the district assessor. As no one but the district board has power to levy such a tax, these levies must be held invalid. The trial court correctly found that the assessment for the irrigation district for the years 1897 and 1906 were invalid.

The judgment of the district court is reversed and the cause remanded, with instructions to enter a decree for the amount of the general taxes and for the irrigation taxes assessed in the years 1901, 1902, 1903 and 1905, with interest on the several amounts at the rate of 10 per cent. per annum from the time of the respective payments thereof by the plaintiff, with costs of the district court. The costs of this court are taxed against the plaintiff.

REVERSED.

REESE, C. J., LETTON and FAWCETT, JJ., not sitting.