WILLIAM MORROW ET AL., APPELLEES, V. FARMERS IRRIGATION DISTRICT, APPELLANT.

FILED JULY 6, 1928. No. 26312.

*Raymond & Fitzgerald,* for appellant.

*Morrow & Morrow, contra.*

Heard before GOSS, C. J., DEAN, GOOD and EBERLY, JJ., and CHASE, REDICK and WHEELER, District Judges.

REDICK, District Judge.

Action to recover from an irrigation district the amount of an assessment paid under protest. Plaintiff had judgment in the district court, and the district appeals. The facts are not in dispute. The Farmers Irrigation District was duly organized in 1897, embracing in its boundaries the lands now owned by plaintiff, described as the east half of the northeast quarter of section 3, in Scotts Bluff county, and approximately 60,000 acres additional. At and prior to the organization of the district the lands of plaintiff were arid and could at said time be benefited by the application of irrigation water on the surface thereof, and were not capable of producing profitable crops without such irrigation. The canal of defendant was constructed above said land in 1909, and thereafter irrigation water was applied upon the surface of said premises. A few years after the application of the irrigation water upon the lands in the vicinity of said premises and including the same, part of the latter, which was lower than the adjacent land, became wet by reason of the irrigation of adjacent lands by the process of percolation. Plaintiff became the owner of the premises March 1, 1920, at which time the north half thereof required irrigation from defendant's canal, but all of the south half, except about three acres in the southwest corner thereof, was too wet for raising crops, and water stood on the surface of about 25 acres. In 1920 defendant constructed a drain across the east half of the northeast quarter, whereby about 20 acres of the southeast quarter of the northeast quarter was relieved of surface water so that it could be profitably cropped without the application of irrigation water on its surface. In 1923 the drain above mentioned was deepened and another one constructed whereby all the

surface water on the southeast quarter of the northeast quarter was removed, and thereafter, under adequate irrigation, crops could be raised on 23 acres, but 20 acres continued to be too wet for that purpose. Only 3 acres of said 23 acres on which crops could be grown could be benefited by the application of water upon the surface thereof, and the remaining 20 acres could not be benefited, but the application of water upon the surface would be injurious, in the year 1925. The reason why the 20 acres, the assessment of which is in controversy herein, could not be benefited by surface irrigation was that the same had become subirrigated by reason of seepage resulting from the application of water from defendant's canal upon adjacent land in the district to such an extent that sufficient moisture for the raising of crops existed.

In 1925 the district assessed that portion of the northeast quarter which was too wet to raise crops at the nominal value of $1 an acre, and the 23 acres at $50 an acre, which included the 20 acres which had become subirrigated, the tax upon which is the matter in dispute, amounting to $100. Before the levy of the taxes they were equalized by the board of equalization, and all proceedings prior to the levy were regular. The plaintiff did not appear before the board and make any objections to the taxes in question, but paid the same under protest, and filed his claim with the board for refund, which was disallowed. Upon appeal to the district court plaintiff recovered a judgment against the district for the sum of $113.35, to draw interest at 10 per cent. per annum.

Two questions are presented for our consideration: First, whether this is a proper proceeding; and second, whether the 20 acres of subirrigated land are subject to taxation by the district. Of these in their order.

1. The defendant contends, in the first place, that plaintiff should have proceeded by application to the board of the district to exclude therefrom the 20 acres in question, for which proceeding provision is made in the statute;

and, in the second place, that he should have appeared before the board of equalization and made his objections to the assessment, and appealed from an adverse decision to the district court; the contention being that by failure to follow one of these remedies he is precluded from attacking the validity of the assessment. However, in 1903 the law governing irrigation districts was amended and said amendment is now known as section 2878, Comp. St. 1922, whereby it was provided that when any person against whose property assessments have been made shall pay said assessments under protest as provided by the general revenue act, the board was authorized to refund the same, and contained the following proviso:

"Provided, however, that no taxes or assessments shall be ordered refunded unless the person complaining shall file in the office of the secretary of such district a copy of his tax receipt, showing the same paid under protest, together with a sworn affidavit in writing showing one of the following reasons why such tax or assessment should be refunded:

"First. That the land upon which such tax or assessment was levied is not within the boundaries of the district for which such lands were taxed, or assessed.

"Second. That the title to said lands are in the state of Nebraska.

"Third. That the lands could not be benefited by irrigation, either by reason of subirrigation * * * or that the lands are nonsusceptible of irrigation from the canal of the district."

All formal requisites of this section were complied with by plaintiff. No doubt all objections which might properly have been submitted to the board of equalization, such as the valuation of the property and the relative amount thereof as compared with other property in the district, would be foreclosed by failure of plaintiff to appear (*State v. American State Bank*, 114 Neb. 740); but the general revenue act provides for payment under protest and refund in all cases where the property was not

liable to taxation or assessment, which is the claim of plaintiff here. We think the section under consideration was a special provision covering all cases within its terms, is cumulative, and the two other remedies suggested are not exclusive, as applied to the question here presented. We have not overlooked the case of *Sowerwine v. Central Irrigation District,* 85 Neb. 687, in which it was held that for the purpose of excluding lands from the district the statutory procedure is the exclusive remedy, and that a suit in equity will not lie (see, also, *Andrews v. Lillian Irrigation District,* 66 Neb. 461) ; but the present case is not for that purpose and will not accomplish that result.

2. Were the 20 acres of subirrigated land subject to taxation by the district? The answer depends very largely upon the construction of the third section of the proviso above quoted, to wit: "That the lands could not be benefited by irrigation, either by reason of subirrigation * * * or that the lands are nonsusceptible of irrigation from the canal of the district." This section clearly requires the claimant, as the condition of refund of taxes, to show that the lands could not be benefited by irrigation; and he is confined to two reasons whereby that fact may be established: (1) Because the lands are already supplied with sufficient moisture by subirrigation and do not require the application of water from the irrigation canal; and (2) that the lands are not susceptible of irrigation from the canal of said district. With the second reason we are not concerned. We think the word "susceptible" is used in the sense of capable, and was intended to refer to lands which, for some cause, could not make use of waters from the canal. The first reason furnishes the principal ground of argument. It is conceded that, from arid lands upon which no crops could be raised, the lands in question have been converted into arable lands in consequence of their subirrigation from the waters of the canal of the district and the distribution thereof over adjoining lands, and the district contends that, inasmuch as they have thereby received special benefits from the operations of the dis-

trict, they should pay therefor in the form of special taxes. On general principles of justice this contention is of great force, but as the only authority to levy taxes and assessments comes from the legislature, warrant for such levy must be found in the statute. The object of organizing irrigation districts is to gather the waters arising therein and distribute the same over lands requiring it because of the insufficiency of normal rainfall, ·and the basis for taxing such lands is found in the special benefits which they so receive. If for any reason growing out of natural causes a particular tract of land does not require additional water to be artificially provided, or is in such a location that water cannot be conducted to it by artificial means, then it cannot be said to be benefited by irrigation.

It would appear to be perfectly plain that by section 3 the legislature intended to provide for these two situations, which can be demonstrated by a permissible reconstruction of said section as follows: "That the lands could not be benefited by irrigation because they are already subirrigated," or "are not susceptible of irrigation." As applied to agriculture, irrigation is defined by Webster as "The supplying of water ·by canals, ditches, etc.; the operation of causing water to flow over land for nourishing plants;" and to subirrigate is "to irrigate below the surface, as by a system of underground porous pipes."

By the language used the evident intent of the legislature was to distinguish between the terms irrigation and subirrigation, using the word irrigation in its ordinary accepted sense of spreading water upon the surface of the land by artificial means, and subirrigation as a natural process by percolation through the soil. Section 2865, Comp. St. 1922, provides for the apportionment of water to the lands in the district, and continues: "Provided, if the tract of land, or any part thereof, to which such water right attaches shall at any time become subirrigated to the extent that water is no longer of any benefit thereon for irrigation purposes," the owner may make application to have the same excluded from the district ·by releasing

his water right and having it applied to other lands. Thus the legislature declared its intention that such lands should no longer be charged with the expense of operating the canals when they had no use for the waters thereof. Again, by providing for the recovery by the landowner of taxes paid under protest upon subirrigated lands, the legislature clearly intended that such lands should not be taxable by the district. Whether this is fair, just, or in consonance with sound public policy is a question for the legislature, and not for the courts. An illustration will make it clear that no power exists in the district to tax the lands in question: Suppose the organization of an irrigation district with boundaries fixed by it; the limit of taxation is within the boundaries so established. After the operation of the district for a number of years the lands adjoining the same (by means of the operation by the district of its canals and the spreading of the water upon the surface of the lands in the district, by the process of seepage or percolation) become subirrigated so that they may be properly utilized for the raising of crops, whereas prior to the operations of the district they were arid and incapable of such use; they would undoubtedly receive a special benefit from the waters of the irrigation district, but no one, we think, would claim that the district had authority to levy assessments upon such lands because of such benefits, for the simple reason that the legislature had not authorized them so to do. By the same reasoning, the test being whether the lands may be benefited by irrigation, and the legislature having declared that lands merely subirrigated are not liable to tax, the mere fact that they are within the district is not sufficient to authorize the tax.

The district further contends that the lands in question are subject to assessment to pay the cost of drainage canals, but the present tax was not levied for that purpose. Also, that the subirrigation referred to means only such as arises from natural causes. The causes here operating —seepage and percolation—might well be deemed natural

causes, although contributed to by the district operations, but the statute imposes no such limitation. Further, that the inclusion of the lands in the district at the time it was organized was a final determination that the lands would be benefited by irrigation, citing *Sowerwine v. Central Irrigation District*, 85 Neb. 687. The statute, however, has anticipated and provided for a change in the situation by provisions for excluding subirrigated lands from the district and refund of taxes thereon paid under protest. It is further argued that the word "subirrigation" should be construed as embracing only lands which have become subirrigated to the extent that they are unfit for cultivation. The words of the statute do not permit such qualification of the term; in fact, the only test provided is that they "could not be benefited by irrigation."

We conclude that the judgment of the district court is right and should be affirmed.

AFFIRMED.