MARGARET C. SMITH, APPELLEE, v. FRENCHMAN-CAMBRIDGE IRRIGATION DISTRICT, APPELLANT.

51 N. W. 2d 376

Filed February 1, 1952. No. 33119.

*Frank B. Morrison,* for appellant.

*Charles E. McCarl,* for appellee.

Heard before SIMMONS, C. J., MESSMORE, YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ.

BOSLAUGH, J.

This is an action in equity to exclude from appellant, an irrigation district, land owned by appellee, to cancel taxes levied upon it by appellant, and to enjoin it from future levy of taxes on the land. The district court awarded appellee the relief she sought and denied appellant a new trial. This appeal tests the validity of the decree.

Appellee and her husband, Sherman E. Smith, owned in joint tenancy the southwest quarter of Section 35, Township 4 North, Range 25 West of the 6th P. M., Furnas County. The part north of an irrigation lateral existing upon and across the land from about 1,045 feet south and a few feet east of the northwest corner thereof, following an irregular course, to the east line of the land a short distance south of the northeast corner thereof, consisting of about 95 acres, had been since 1938 until the time of the trial irrigated with water produced by a well and pump located on the land of a capacity in excess of 1,000 gallons a minute.

Sherman E. Smith signed a petition for the creation and organization of the Frenchman-Cambridge Irrigation District, and described in connection with his signature the "SW¼, Sec. 35, Twp. 4, Range 25, Acres 162, Excepts 95 acres now under pump irrigation." Appellee did not sign the petition for the organization and creation of appellant, or any request or consent that the land be included in the district. Her husband did not discuss with her his intention or decision to sign the

petition. He died in 1950, and appellee then became the owner in fee simple of the whole of the land involved in this case.

Appellant was established and declared a duly organized and created irrigation district under Chapter 46, R. S. 1943, by the board of county commissioners of Red Willow County on the 8th day of April 1946. The order of the board treated and included all of the land involved herein as a part of the area of appellant, and the district assessed the land of appellee and levied taxes thereon for irrigation purposes for each of the years 1948, 1949, and 1950. Appellee paid no part of the taxes levied by the district.

Appellee contends that authority and jurisdiction were lacking to include the part of her land irrigated by pump consisting of about 95 acres in the district because it was excepted and reserved by the declaration and act of Sherman E. Smith when he signed the petition to establish appellant, and for the reason that the statute under which appellant was created mandatorily exempted it from becoming a part of the district, except upon written application of its owners. Section 46-108, R. S. 1943, contains the provision that: "The person, * * * whose land, within any proposed district, is provided with water by pumping, * * * shall not be included therein except upon written application of the * * * owners of such land; Provided, that one thousand gallons per minute of water shall exempt one hundred and sixty acres, * * *."

The North Platte Irrigation & Land Company constructed a ditch to irrigate certain lands before the passage of the irrigation statute of 1889. Laws 1889, c. 68, p. 503. After the irrigation statute became effective, the company posted and filed the notice of appropriation required by it. Thereafter, when the irrigation law of 1895 (Laws 1895, c. 69, p. 244) took effect, the company filed a claim with the board of irrigation for the appropriation of water to irrigate the land served by the

ditch, and the appropriation of water therefor was allowed. Afterwards the Suburban Irrigation District was formed under the provisions of another act of the Legislature of 1895 (Laws 1895, c. 70, p. 269), and there was included in its boundary the land involved in the case later referred to and quoted herein. The district issued bonds and incurred obligations. It levied taxes on the land in the manner provided by law for the years 1896 to 1904, inclusive. It was practicable to irrigate the land from the ditch of the North Platte Irrigation & Land Company, and it had sufficient water and was willing to furnish it for that purpose at all times.

The act last referred to contained the provision: "* * * that where ditches or canals have been constructed before the passage of this act of sufficient capacity to water the land thereunder for which the water taken in such ditches is appropriated, such ditches and franchises and the land subject to be watered thereby shall be exempt from operations of this law * * * and that this law shall not be construed to in any way affect the rights of ditches already constructed." Laws 1895, c. 70, § 1, p. 269. State v. Several Parcels of Land, 80 Neb. 424, 114 N. W. 283, involved the validity of taxes levied by the Suburban Irrigation District on land under and served by the ditch of the North Platte Irrigation & Land Company. The taxes were held invalid on the basis that the land was exempt and could not be made a part of the Suburban Irrigation District because of the prohibition in the part of the statute last above quoted. Jurisdiction or authority to include it was lacking, and that objection was available at any time in a proper case. It is therein said: "The purpose of the district irrigation law was obviously to provide the means of reclaiming arid land for which up to that time water had not been available. It would have been clearly unjust for the legislature to permit these districts to be organized to include land already reclaimed, except in cases where the purpose of forming the dis-

trict was to purchase or take over an irrigation system already existing; * * *. We are therefore satisfied that his land should not have been included in the boundaries of the Suburban Irrigation District in the first instance. * * * 2. It is, however, contended that the county board had jurisdiction, and that its determination cannot be attacked in this proceeding. * * * A similar question, arising under the same statute, has once been before this court. Sections 47 to 54, inclusive, of the same act provide for proceedings by means of which land may be excluded from an irrigation district; and section 49 contains the proviso that in no case shall any land be held in any district or taxed for irrigation purposes which cannot, from any natural cause, be irrigated thereby. This clause was construed in Andrews v. Lillian Irrigation District, 66 Neb. 461. In this case it was alleged that the plaintiffs were the owners of certain lands lying within the boundaries of the irrigation district, which were low, wet, swampy lands and totally unfit for irrigation, and which needed to be drained before they could be farmed. * * * Considering the proviso in section 49 the court say: '* * * Whether a particular tract of land from some natural cause cannot be irrigated is a question which goes to the jurisdiction of the county board over such tract and may be raised at any time in a proper case, because section 49, supra, expressly denies the jurisdiction of the county board to include such land in an irrigation district, or to tax it for irrigation purposes.' The reasoning of this case applies to the question we are considering. If the provision that land which cannot, from any natural cause, be irrigated by a ditch excludes it from the jurisdiction of the county board, certainly the provision that land subject to be watered by a ditch constructed before the passage of the act and of sufficient capacity to water the same shall be exempt from the operation of the law would prevent the county board from passing upon and determining this question. * * * The exclusion in

section 1 is more radical and fundamental than that in section 49. It is that the lands described shall be exempt from the operation of the law; and it is only by the operation of the law that the county board can claim jurisdiction. Without this statute, from which this land is expressly made exempt, neither the county board which made the order, nor the district court which afterwards examined it, had any jurisdiction whatever. Their jurisdiction arose by operation of this statute. The defendant's land was expressly and by the plain and unequivocal language of the statute exempted from its operation. * * * 3. It is contended on behalf of the irrigation district that, if the lands of the defendant Walsh were wrongfully included in the district, he had a plain statutory remedy under sections 46 to 53, inclusive, of the act. We have already seen that under the rule in Andrews v. Lillian Irrigation District, supra, the express exclusion of authority negatives the jurisdiction of the county board." See, also, Sowerwine v. Central Irrigation District, 85 Neb. 687, 124 N. W. 118. The position of appellee on this phase of the case was properly sustained by the district court.

Appellee asserts that the part of her land south of the irrigation lateral, consisting of about 65 acres, was made a part of the district contrary to the facts and in violation of the law by virtue of which appellant was created and exists. The claim of absence of authority or jurisdiction to attach it to the area of the district is based on the allegation that this part of the land cannot from natural causes be irrigated.

There is no material dispute as to the character and condition of this part of the land of appellee. It is very rough and rolling land. It has innumerable slopes and grades and none that continue much over 150 feet in any direction. There are ditches, depressions, hills, and mounds. The topsoil is from two inches thick on the higher parts to two feet on the better parts of the land. If it were suitable for irrigation, it could be watered

by use of the pump on the farm. The subsoil is fine river sand down to shale. Five or six acres were leveled in 1943. It has been watered from pump, but it has not produced any crop in the years since irrigation thereon commenced.

A witness of 17 years' experience as a soil conservationist stated he had been familiar with the Smith land since 1941; that the area north of the irrigation lateral had been irrigated by pump as long as he had known the land; that the area south of the lateral was "quite hummocky"—that is, it has mounds, knolls, depressions, and undulations without any particular direction of slope extending for any distance—"there is every slope imaginable"; that it could not be irrigated by gravity as the cost would be too much to level it, and to do so would expose too much topsoil, and if leveled the land would be unproductive and impracticable for farm operations—"Yes, and you wouldn't have much left when you got done"; and "It would be cheaper to buy other good land and forget about this, * * *."

The incidence that any part of the land south of the lateral was not irrigated during the period of 1939 through 1951 when there was available water brought to and conducted along its border and the value of the land would have been increased 100 percent by irrigating it, is not wholly without significance and influence when considered with the other facts disclosed by the record in concluding that this land was not susceptible of irrigation. The fact is that the part of the land south of the irrigation lateral is not suitable for irrigation. It is especially not suitable for gravity irrigation, and any attempt to make it so would involve an unreasonable expense and would result in the destruction of what fertility the land now has. The record is convincing that this land cannot from natural causes be irrigated by works of the appellant that are suitable only for gravity irrigation, notwithstanding the incidental recitation in the petition for the organization of the district that "all

of said land being susceptible to one mode of irrigation from a common source and by the same system of works."

Section 46-176, R. S. 1943, contains the mandate that: "* * * in no case shall any land be held by any district or taxed for irrigation purposes which cannot from any natural cause be irrigated thereby."

The order of the county board establishing and defining the boundaries of appellant is not conclusive that land within the boundaries could not, from some natural cause, be irrigated by the district. The fact in that regard may be raised and determined at any time in a proper case, and if land is nonirrigable by reason of natural causes, it cannot be held in an irrigation district and taxed. Andrews v. Lillian Irrigation District, 66 Neb. 461, 97 N. W. 336, first considered the quoted provision and said in reference thereto: "Whether a particular tract of land from some natural cause can not be irrigated, is a question which goes to the jurisdiction of the county board over such tract and may be raised at any time in a proper case, because section 49, supra, expressly denies the jurisdiction of the county board to include such land in an irrigation district, or to tax it for irrigation purposes. Should such land be included within the boundaries of an irrigation district, or taxed for irrigation purposes, it would be in violation of a plain provision of the statute. That being true, whether it should be held in such district, or taxed for irrigation purposes, does not depend on what is for the best interest of the district, nor on the consent of those holding bonds issued by the district, because the statute is mandatory that it should not be thus held and taxed. The statutory proceedings, therefore, to have lands detached, which make the question whether they shall be detached, or not, dependent on what is for the best interest of the district, and upon the consent of the holders of the district bonds, do not apply." See, also, Birdwood Irrigation District v. Brodbeck, 148 Neb. 824, 29 N. W.

2d 621; Sowerwine v. Central Irrigation District, *supra;* Annotation, 100 A. L. R. 1292.

The argument of appellant that the landowner may not resort to equity in an original action for relief from the inclusion of his land in an irrigation district of the class of the one involved herein, in direct violation of the statute upon which the district depends for its creation and existence, but that the landowner must depend upon the statutory procedure for detaching land from the district, is denied by the decisions of this court to which reference has just been made.

This court has discussed the meaning of the language "land * * * which cannot from any natural causes be irrigated thereby" in two cases. In Andrews v. Lillian Irrigation District, *supra,* it is said: "Evidently the legislature meant to exclude from the irrigation district, and from taxation in support thereof, lands that were not susceptible of irrigation. If, because of the natural conformation of the surface, lands within the irrigation district lay so high as to render it impossible to conduct water thereon by means of irrigation ditches for the irrigation of the land, it would hardly be contended that such lands were not, within the meaning of the section of the statute to which attention has been directed, land 'which can not from any natural cause be irrigated thereby,' and therefore could not lawfully be held in such district, and taxed to support the system."

In Wight v. McGuigan, 94 Neb. 358, 143 N. W. 232, it is significantly remarked that: "The owner of a specific tract of land ought not to be compelled to join an irrigation district and pay taxes for the support thereof if his land as a whole is so situated that for natural causes it cannot be irrigated. * * * If a government subdivision of land, or a tract otherwise capable of identification and definite description, is incapable of irrigation, and so situated with reference to the proposed district and other lands therein as to make such a course practicable, such tract might be omitted from the dis-

trict, although it formed a part of a larger tract of the same owner." The 65 acres of the land of appellee south of the irrigation lateral is land which cannot, because of natural causes, be irrigated by appellant within the meaning of the statute as construed by the decisions of this court.

The findings and judgment of the trial court contain errors in the description and the statement of the character of the several parts of the land of appellee and because thereof the judgment should be, and is vacated and set aside, and a judgment should be rendered in this court.

It should be and is adjudged that the southwest quarter of Section 35, Township 4 North, Range 25 West of the 6th P. M., Furnas County, Nebraska, should be, and it is hereby detached and excluded from the Frenchman-Cambridge Irrigation District; that the taxes attempted to be levied upon the land by appellant for the years 1948, 1949, and 1950, should be, and they are adjudged to be null and void and they should be and are canceled, and the title to the land quieted against them; that appellant and all persons acting for it should be, and they are prohibited and enjoined from levying or attempting to levy any tax upon said land; and that appellee recover costs herein.

JUDGMENT OF THE DISTRICT COURT VACATED.

JUDGMENT RENDERED IN THIS COURT FOR APPELLEE.