STEVEN CROUSE AND JODEAN CROUSE, HUSBAND
AND WIFE, APPELLANTS, V. PIONEER IRRIGATION
DISTRICT ET AL., APPELLEES.
719 N.W.2d 722

Filed August 18, 2006.   No. S-05-402.

Donald G. Blankenau and Jaron J. Bromm, of Blackwell, Sanders, Peper & Martin, L.L.P., for appellants.

Stanley C. Goodwin, of Goodwin Law Office, for appellees.

Leroy W. Orton, of Orton Law Office, for amicus curiae Nebraska State Irrigation Association.

HENDRY, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, McCORMACK, and MILLER-LERMAN, JJ.

STEPHAN, J.

Steven Crouse and JoDean Crouse brought this action for mandamus to require Pioneer Irrigation District (District) and its individual directors to exclude 200 acres of the Crouses' farm-land from the District and to refund taxes which the Crouses paid to the District on that land. Following an evidentiary hear-ing, the district court for Dundy County sustained a motion to dismiss filed by the District and its directors. The Crouses filed this timely appeal, which we removed to our docket on our own motion pursuant to our statutory authority to regulate the case-loads of the appellate courts of this state. See Neb. Rev. Stat. § 24-1106(3) (Reissue 1995). Finding no error, we affirm the judgment of the district court.

## I. BACKGROUND

On or about January 1, 1994, the Crouses purchased 545 acres of land in Dundy County, Nebraska, from the Farmers Home Administration (FmHA). Of the land purchased, 301 acres were located within the District in Dundy County. At the time of the Crouses' purchase, the District held water appropriation D-1025, which was a permit to divert water from the North Fork of the Republican River at a specific point in Yuma County, Colorado.

On February 10, 1995, the then Department of Water Resources (Department) gave notice of an adjudication hearing concerning portions of water appropriation D-1025. The Department held a prehearing conference on February 22 for the purpose of reviewing Department records with members of the District board and irrigators appropriating water under D-1025. At the adjudication hearing, the Department considered whether some of the water rights granted by D-1025, including rights attached to 200 unirrigated acres of the Crouses' land, should be canceled under the provisions of Neb. Rev. Stat. § 46-229.04(2) (Reissue 1993), which provided in relevant part:

If it is determined that such water has not been put to bene-ficial use or has ceased to be used for such purpose for more than ten consecutive years, the water right shall be declared canceled and annulled, except that . . . sufficient cause for

nonuse shall be deemed to exist . . . if the landowner used the available water supply on only part of the land under the water appropriation because of an inadequate water supply.

For the sake of completeness, we note that § 46-229.04 has since been amended in ways not applicable to this action. See Neb. Rev. Stat. § 46-229 (Reissue 2004).

Steven Crouse appeared at the Department adjudication hearing and asked that the water rights for the 200 acres remain with the property. Evidence established that from 1985 to 1994, the 200 acres were owned by FmHA following repossession. A representative of FmHA testified that during the time the property was owned by FmHA, it was " 'prevented from being irrigated by government regulations.' " Steven Crouse testified that after he purchased the land, he chose not to use district water for the 200 acres at issue because he felt that there would be too much waste in transporting water from the canal to his property. He further testified that he planted crops which would not need a lot of water. On April 9, 1997, the Department issued an order canceling the Crouses' right to irrigate the 200 acres based upon its finding that the land had not been irrigated within the previous 10 years and that therefore, the nonuse provision set forth in § 46-229.04(2) applied. Notice of the Department's order was sent to the Crouses. The record does not reflect whether they appealed the decision of the Department pursuant to their rights under Neb. Rev. Stat. § 46-229.05 (Reissue 1998).

On or about May 26, 2004, the Crouses filed a petition with the board of directors of the District requesting that the 200 acres at issue be excluded from the District pursuant to Neb. Rev. Stat. §§ 46-174 to 46-184 (Reissue 2004), and further requesting that all taxes paid to the District on such property be refunded pursuant to § 46-184. The Crouses based their request on the District's failure to provide water for irrigation of the 200 acres and upon an anticipated inability of the District to be able to do so in the future because of the loss of water rights. The board of directors held a meeting on the Crouses' petition on or about July 22. No landowners objected to the petition, but the board did not reach a decision on that date.

Meanwhile, pursuant to legislation enacted in 2004, the Nebraska Department of Natural Resources (DNR) provided

notice to the public of its final determination that the Upper Republican Natural Resources District (Upper Republican NRD) was fully appropriated in its entirety and that it had thus placed an "immediate stay on the issuance of any new natural-flow, storage, or storage-use appropriations in the whole of the [Upper Republican] NRD." DNR also imposed stays, effective July 26, 2004, on the issuance of water well construction permits, the construction of certain new water wells, the use of existing water wells to increase the number of acres historically irrigated, and on "any increase, through use of an existing surface water right, of the number of acres historically irrigated." There is nothing in the record to indicate that the Crouses petitioned DNR for reevaluation of the order. See Neb. Rev. Stat. § 46-713(2) (Reissue 2004).

The board of directors held a meeting in September 2004 to consider the Crouses' petition for exclusion from the District, but no action could be taken, as there was not a quorum present. There were no meetings of the District board in October or November.

On December 7, 2004, the Crouses commenced this action against the District and the individuals composing its board of directors, seeking a peremptory writ of mandamus. They alleged that the District had a "clear duty" to exclude the 200 acres and to refund taxes of approximately $41,436 which the Crouses had paid to the District from 1994 to 2004. The District and its directors filed a motion to dismiss on the ground that the Crouses failed to state a cause of action upon which relief could be granted. Thereafter, the Crouses filed a motion for peremptory writ of mandamus and memorandum in support.

The district court conducted an evidentiary hearing on both motions. The parties offered identical evidence, and it was received without objection. Following argument and briefing, the district court entered an order granting the District's motion to dismiss without leave to amend. The court reasoned that the 1997 DNR order canceling the water rights to the Crouses' 200 acres, and the Crouses' failure to appeal that order, "effectively prevent[s the] District from delivering water to the [Crouses] on the lands that they are attempting to remove from the . . . District." The court concluded that the July 2004 DNR declaration that

the water in the Upper Republican NRD was fully appropriated had no effect on whether the Crouses' land was irrigable because the land became nonirrigable upon cancellation of the Crouses' water rights in 1997. Addressing the Crouses' claim that their land could not be irrigated due to natural causes, the court concluded that this court has interpreted that phrase to mean land, which, "because of the character of the land itself," cannot be irrigated. The court concluded that under our case law, a temporary drought or a fully appropriated water right could not be a natural cause that would prevent real estate from being irrigable.

## II. ASSIGNMENTS OF ERROR

The Crouses assign three errors which can be restated as two: The district court erred (1) in determining that they were not entitled to a writ of mandamus and (2) in finding that insufficient water supply is not a natural cause of nonirrigable lands for purposes of exclusion under § 46-176.

## III. STANDARD OF REVIEW

Mandamus is a law action and is defined as an extraordinary remedy, not a writ of right, issued to compel the performance of a purely ministerial act or duty, imposed by law upon an inferior tribunal, corporation, board, or person, where (1) the relator has a clear right to the relief sought, (2) there is a corresponding clear duty existing on the part of the respondent to perform the act, and (3) there is no other plain and adequate remedy available in the ordinary course of law. *State ex rel. Steinke v. Lautenbaugh*, 263 Neb. 652, 642 N.W.2d 132 (2002); *Sydow v. City of Grand Island*, 263 Neb. 389, 639 N.W.2d 913 (2002); Neb. Rev. Stat. §§ 25-2156 to 25-2169 (Reissue 1995 & Cum. Supp. 2004). When reviewing questions of law, an appellate court has an obligation to resolve the questions independently of the conclusion reached by the trial court. *Merz v. Seeba*, 271 Neb. 117, 710 N.W.2d 91 (2006); *Magistro v. J. Loü, Inc.*, 270 Neb. 438, 703 N.W.2d 887 (2005).

## IV. ANALYSIS

As noted, both the motion for peremptory writ of mandamus and the motion to dismiss were submitted to the district court at the same time, and the same evidence was offered and

received on both motions. Neb. Ct. R. of Pldg. in Civ. Actions 12(b)(6) (rev. 2003) provides that when a matter outside of the pleadings is presented by the parties and accepted by the trial court, a defendant's motion to dismiss must be treated as a motion for summary judgment as provided in Neb. Rev. Stat. §§ 25-1330 to 25-1336 (Reissue 1995 & Cum. Supp. 2004). *Wise v. Omaha Public Schools*, 271 Neb. 635, 714 N.W.2d 19 (2006); *Carruth v. State*, 271 Neb. 433, 712 N.W.2d 575 (2006). The party moving for summary judgment has the burden to show that no genuine issue of material fact exists and must produce sufficient evidence to demonstrate that it is entitled to judgment as a matter of law. *New Tek Mfg. v. Beehner*, 270 Neb. 264, 702 N.W.2d 336 (2005); *Woodhouse Ford v. Laflan*, 268 Neb. 722, 687 N.W.2d 672 (2004). Because all parties rely on the same evidentiary record, we treat the facts as uncontroverted and focus our appellate review on whether the district court erred in holding that the District and its directors were entitled to judgment as a matter of law.

### 1. EXCLUSION OF LANDS FROM IRRIGATION DISTRICT

#### (a) Statutory Procedure

Neb. Rev. Stat. §§ 46-101 to 46-128 (Reissue 2004) provides for the organization and governance of irrigation districts in Nebraska. The principal purpose for the organization of an irrigation district is to furnish water for irrigation to all landowners within the district upon fair and equitable terms and conditions. *State ex rel. Blome v. Bridgeport Irr. Dist.*, 205 Neb. 97, 286 N.W.2d 426 (1979); *State, ex rel. Clarke, v. Gering Irrigation District*, 109 Neb. 642, 192 N.W. 212 (1923). An irrigation district formed pursuant to the enabling statutes has certain corporate powers, including authority to levy assessments and taxes against land within its boundaries. See, Neb. Rev. Stat. §§ 46-129, 46-130, and 46-131 to 46-144 (Reissue 2004); *State, ex rel Clarke, v. Gering Irrigation District, supra.*

There is a specific statutory procedure by which a landowner may request exclusion of lands from an irrigation district. See §§ 46-173 through 46-184.

The owner or owners in fee of one or more tracts of land which constitute a portion of an irrigation district may file

with the board of directors of the district a petition praying that such tracts and any other tracts contiguous thereto may be excluded and taken from the district. § 46-174. Upon the filing and service of a petition to exclude lands, the district must publish notice of the filing in order to permit persons wishing to object to any change in boundaries to file written objection. § 46-175. The notice must include the time and place of the board meeting at which the petition will be considered. §§ 46-174 and 46-175. The failure of any person interested in the district to show cause in writing why the tract or tracts of land mentioned in the petition should not be excluded from the district is deemed and taken as an assent by him to the exclusion. § 46-176.

Generally, the board of directors has discretionary authority to order or deny a petition for exclusion based on the best interests of the District. § 46-177. However, § 46-176 expressly denies the board jurisdiction to hold or include any land "which cannot from any natural cause be irrigated thereby." Where the subject land "cannot from any natural cause be irrigated," the District is without jurisdiction to include and tax it, and it must be detached without regard to the best interests of the district. See *Smith v. Frenchman-Cambridge Irrigation Dist.*, 155 Neb. 270, 51 N.W.2d 376 (1952).

### (b) Application

By initially petitioning the District for exclusion of their property, the Crouses invoked the District's broad discretionary powers to consider exclusion of their land. However, by seeking a peremptory writ of mandamus, the Crouses have significantly narrowed their remedy. Mandamus is available to enforce the performance of ministerial duties of a public official but is not available if the duties are quasi-judicial or discretionary. *State ex rel. City of Alma v. Furnas Cty. Farms*, 257 Neb. 189, 595 N.W.2d 551 (1999); *Pratt v. Nebraska Bd. of Parole*, 252 Neb. 906, 567 N.W.2d 183 (1997). The burden is on the Crouses to prove clearly and convincingly that the act they seek to compel is purely ministerial and that they are therefore entitled to the action. See *Krolikowski v. Nesbitt*, 257 Neb. 421, 598 N.W.2d 45 (1999). A duty or act is ministerial when there is " ' " ' no room

for the exercise of discretion, official or otherwise, the performance being required by direct and positive command of the law.' " ' . . ." *Pratt v. Nebraska Bd. of Parole*, 252 Neb. at 911, 567 N.W.2d at 187.

## (i) Effect of Cancellation of Water Rights

The Crouses argue that they have a clear right to have their land excluded from the District because the District has denied their requests for water. They base their argument on *State ex rel. Blome v. Bridgeport Irr. Dist.*, 205 Neb. 97, 286 N.W.2d 426 (1979), in which we affirmed a peremptory writ of mandamus requiring an irrigation district to deliver water to the highest point on a landowner's land so as to allow all of his property within the district to be irrigated. We rejected a defense that the landowner had lost his water rights for the tracts in question, noting that the Department had original and exclusive jurisdiction to adjudicate water rights pertaining to irrigation and that there was no evidence that the Department had ever suspended or canceled any of the landowner's water rights. We concluded that the irrigation district had no power to cancel or terminate the landowner's water rights and that it could not suspend delivery of water except for nonpayment of taxes and assessments, as provided by statute and the bylaws of the district.

Based upon *State ex rel. Blome*, the Crouses argue that if the District cannot meet its obligation to provide water to their property, it has a clear duty to exclude the property from the District. However, this case is distinguishable from *State ex rel. Blome* because of the 1997 cancellation of the Crouses' water rights by the Department pursuant to § 46-229.04(2). The cancellation was based in part upon evidence that the Crouses chose not to use water available from the District for irrigation when they acquired the property from FmHA. The District has not refused to provide water as in *State ex rel. Blome*, but, rather, is legally prevented from doing so because of the cancellation of water rights due at least in part to the Crouses' own voluntary decision not to exercise their rights. Thus, *State ex rel. Blome* provides no support for the Crouses' argument that the District has a clear duty to either provide water or exclude their land from its boundaries.

### (ii) § 46-176

As noted above, land which "cannot from any natural cause be irrigated" cannot lawfully be included in an irrigation district and taxed. § 46-176; *Smith v. Frenchman-Cambridge Irrigation Dist.*, 155 Neb. 270, 51 N.W.2d 376 (1952). See, *Birdwood Irrigation District v. Brodbeck*, 148 Neb. 824, 29 N.W.2d 621 (1947); *Andrews v. Lillian Irrigation District*, 66 Neb. 458, 97 N.W. 336 (1903) (on rehearing). Whether such land should be included in an irrigation district and taxed " 'does not depend on what is for the best interest of the district, nor on the consent of those holding bonds issued by the district, because the statute is mandatory that it should not be thus held and taxed.' " *Smith v. Frenchman-Cambridge Irrigation Dist.*, 155 Neb. at 277, 51 N.W.2d at 381, quoting *Andrews v. Lillian Irrigation District, supra*. On the other hand, if the land is irrigable or is nonirrigable for reasons other than natural causes, then the exclusive remedy for detaching lands after an irrigation district has been duly organized is found at §§ 46-174 to 46-184, and the decision regarding whether or not to exclude the land from the District is discretionary under § 46-177. See, *Sowerwine v. Central Irrigation District*, 85 Neb. 687, 124 N.W. 118 (1909); *Andrews v. Lillian Irrigation District, supra*. Thus, in order to have a clear legal right to exclusion of their lands from the District, the Crouses must establish that the land cannot from any natural cause be irrigated. § 46-176.

The Crouses contend that the land was made nonirrigable from a natural cause by the determination of DNR in 2004 that the Upper Republican NRD is "fully appropriated," which they regard as a finding that natural conditions do not provide a supply of water sufficient to meet the demand. They contend that because of the stay on the issuance of any new surface water appropriations and the lack of any unappropriated water in the basin, the absence of water is a natural cause which precludes the District from irrigating their land, thereby creating a clear duty to exclude the land from the District under § 46-176.

In determining whether particular agricultural land must be excluded from an irrigation district pursuant to § 46-176, our cases look to the intrinsic characteristics of the land itself, not to external factors. In *Andrews v. Lillian Irrigation District*, 66

Neb. at 467-68, 97 N.W. at 338, this court construed the language currently set forth in § 46-176 as follows:

> Evidently the legislature meant to exclude from the irrigation district, and from taxation in support thereof, lands that were not susceptible of irrigation. If, because of the natural conformation of the surface, lands within the irrigation district lay so high as to render it impossible to conduct water thereon by means of irrigation ditches for the irrigation of the land, it would hardly be contended that such lands were not, within the meaning of the section of the statute to which attention has been directed, land "which can not from any natural cause be irrigated thereby," and therefore could not lawfully be held in such district, and taxed to support the system.

However, if land "is such as can be watered," it may be included in an irrigation district. *Wight v. McGuigan*, 94 Neb. 358, 362, 143 N.W. 232, 234 (1913).

In *Smith v. Frenchman-Cambridge Irrigation District, supra*, this court addressed the question of whether certain land should be excluded from an irrigation district under § 46-176. The land was described as "very rough and rolling," with

> innumerable slopes and grades and none that continue much over 150 feet in any direction. There are ditches, depressions, hills, and mounds. The topsoil is from two inches thick on the higher parts to two feet on the better parts of the land. . . . The subsoil is fine river sand down to shale.

155 Neb. at 275-76, 51 N.W.2d at 380. We found the record "convincing that this land cannot from natural causes be irrigated" by the district and ordered that it be excluded and prior taxes be canceled. *Id.* at 276, 51 N.W.2d at 380.

In *Sowerwine v. Central Irrigation District*, 85 Neb. 687, 124 N.W. 118 (1909), this court also examined the intrinsic characteristics of the land in question to determine whether it should be excluded from an irrigation district under the statutory language currently codified in § 46-176. The evidence established that during approximately 3 months of the year, a slough running through the land was "practically full of water" and another portion of the land was "more or less wet and spongy," with standing water in some places. *Id.* at 692, 124 N.W. at 119.

During the rest of the year, however, the slough was "practically dry" and the remaining land was dry. *Id*. We held that in order to defeat the jurisdiction of the board to hold lands in an irrigation district, it must be "clearly shown, and in like manner found by the court, that the lands embraced within the district are, in fact, nonirrigable." 85 Neb. at 693-94, 124 N.W. at 120. We further held that if, under the facts, there is any doubt on the subject, such doubt must be resolved in favor of the jurisdiction of the board, and the parties left to the remedy provided by statute. We concluded that from the facts summarized above, it could not be determined as a matter of law that the land was nonirrigable and that thus, exclusion was within the discretionary authority of the board.

In the case at bar, there has been no claim or showing that the intrinsic characteristics of the land in question are such that it "cannot from any natural cause be irrigated" within the meaning of § 46-176. We agree with the district court that the 2004 DNR determination is not a factor which may be considered in this analysis. Accordingly, the Crouses have not established a clear duty to exclude the land from the irrigation district which would be enforceable by mandamus. Their sole remedy is to petition for exclusion under the provisions of §§ 46-174 to 46-184, as they have apparently done.

## 2. REFUND OF IRRIGATION TAXES

The Crouses also contend that § 46-184 entitles them to a refund of taxes which they have paid to the district on the 200 acres in question. The statute upon which they rely provides in part: "In case of the exclusion of any lands under the provisions of sections 46-173 to 46-183, there shall be refunded to any and all persons who have paid any assessment or assessments to such district, or any land so excluded, any sum or sums so paid." Because we conclude that the Crouses have no clear right enforceable by mandamus to have their property excluded from the District, it follows that they have no right in this action to a refund of taxes under § 46-184.

In reaching this conclusion, we do not address the merits of any refund claim under § 46-184 which may be asserted in the event that the board of directors of the District were at some

point to exercise its discretionary power under § 46-177 to exclude lands. We further note that § 46-141 affords a separate procedure whereby a landowner who pays irrigation district assessments under protest may claim a refund upon a showing of one of three grounds stated in the statute. See *Morrow v. Farmers Irrigation District*, 117 Neb. 424, 220 N.W. 680 (1928). This case presents no issue regarding a refund claim under § 46-141.

## V. CONCLUSION

For the reasons discussed, we affirm the judgment of the district court.

AFFIRMED.