STATE OF NEBRASKA EX REL. ROLLIN E. BLOME ET AL., APPELLEES, v. BRIDGEPORT IRRIGATION DISTRICT ET AL., APPELLANTS.

286 N. W. 2d 426

Filed December 18, 1979. No. 42352.

Robert J. Bulger of Bulger & Jensen, for appellants.

Wright & Simmons and John A. Selzer, for appellees.

Heard before KRIVOSHA, C. J., BOSLAUGH, McCOWN, CLINTON, BRODKEY, WHITE, and HASTINGS, JJ.

McCOWN, J.

In this action the plaintiffs sought a peremptory writ of mandamus to require defendant irrigation district to take the necessary action to deliver water to the highest point on plaintiffs' land so as to allow them to irrigate all the irrigable land in the acreage, some of which cannot now be irrigated from the present point of delivery. The District Court granted the writ and the irrigation district has appealed.

The land involved is a quarter section of farmland in Morrill County, Nebraska, except for a small triangular tract in the northeast corner. The land consists of approximately 146 acres and is included in the defendant Bridgeport Irrigation District. Irrigation district taxes have been assessed and paid at all times relevant here.

Plaintiff Rollin E. Blome's father purchased the land in 1946. Since the death of his father in 1950, the plaintiff, Rollin E. Blome, has farmed the land

by himself or with other members of his family, and is now the individual record owner of the land. In 1946 the land was not irrigated, sand had blown up in piles, and most of the land showed the effects of severe wind erosion. At some former time two irrigation ditches connected the land on its southern boundary to an irrigation lateral of the defendant district designated as lateral No. 15. The easterly irrigation ditch entered the Blome land through a siphon under the county road at a point approximately in the center of the south boundary of the land. The westerly irrigation ditch and siphon entered the land approximately 600 feet to the west. The two ditches connected to lateral No. 15 approximately 600 feet south of the center of the south boundary of plaintiffs' land. Immediately to the north of the siphon on the east ditch on the south boundary of plaintiffs' land is the present high point of the land after leveling. The high point prior to leveling was near the southwest corner of the land.

Between 1950 and 1961 the land was farmed by dryland summer fallow methods or placed in the soil bank. In 1961 Blome began making plans to bring the land back into production, including plans for leveling the land a little at a time as it could be afforded. Prior to beginning the leveling, Blome consulted the defendant irrigation district about delivery of water to the land and was told that the district could deliver water through the siphons on the southern boundary of the Blome land, and that it would deliver water to those points. Blome then had a survey made of the west 100 acres of the land to determine how it should be leveled so as to allow it to be irrigated from the two points on the southern boundary of the land. The survey did not extend to the east portion of the land at that time, since it was then thought to be too rough.

The leveling program began in 1962 when 55 acres were leveled on the west side of the land and approx-

imately 25 more acres were leveled in 1967. In that year Blome drilled a well and installed a pump at about the center of the south boundary of the land. The pump was originally installed for emergency use but Blome began use of the pump for irrigation purposes in 1968 when irrigation was commenced. For 2 days in 1968 plaintiff also took irrigation water from the box in lateral No. 15 through the east ditch and siphon that entered the Blome land at the center of the south boundary. That effort was abandoned when Blome could not hold the water in the ditches on his own land, although he had no trouble with the ditch or the siphon to the south of his land. Blome leveled another 39 acres to the east in 1969, but did not level the remainder of the eastern portion of the land until 1973.

In 1970 Blome met with two directors of the irrigation district and requested that water be delivered to his land at a point near the southeast corner from lateral No. 16 of the irrigation district which ran north and south along the east side of the land. Blome testified that he told the directors at the time of the request that he wanted the water for the east portion of his land but did not want to compromise his position on having water delivered at the center of the south boundary also. He testified that the directors made no objection to the request, although one of the directors testified that nothing was said about a delivery point on the south boundary.

The defendant irrigation district has delivered water from lateral No. 16 at or near the southeast corner of the land since 1970. In 1971 Blome built a concrete ditch along the south boundary of the land from the southeast corner to approximately the center of the south boundary. That point was approximately 50 feet east of, and approximately 2 feet lower than, the high point of the land. In 1973 the remainder of the eastern portion of the land was leveled. Since that time all the eastern portion of the

land has been irrigated with water delivered at the southeast corner of the land from lateral No. 16 through the concrete ditch along the south border.

Because of the elevation of the land Blome could not deliver water from the southeast corner any further west along the south line. To water any of the western portion of the land with water received at the southeast corner, Blome would have to build a curved ditch to the northwest from the west end of the concrete ditch on the south boundary. That method would leave approximately 12 acres in the southwest corner of the land which could not be irrigated from water delivered at the southeast corner.

Since 1968 the westerly portion of the Blome land has been irrigated from the irrigation well and pump installed by Blome. Blome constructed a concrete ditch along the west boundary of the land and pumped the well water to the south end of the concrete ditch to irrigate the western portion of the land.

In general the land leveling provides for the flow of irrigation water from west to east on the westerly portion of the land and from south to north on the easterly portion of the land with distribution designed to be made from the west and south boundaries.

At some time after the completion of the land leveling Blome requested the defendant irrigation district to deliver water to the high point at the center of the south boundary of the land from the box on lateral No. 15, 600 feet to the south. The district refused to procure a right-of-way for a ditch across that 600 feet and to deliver water to the plaintiff at that point.

Sometime prior to August 1976, the plaintiffs here filed a quiet title action against the landowners to the south and the irrigation district, attempting to establish a right-of-way by prescription in either the plaintiffs or the irrigation district on the basis of the

old prescriptive use. In August 1977, the District Court entered judgment finding that no prescriptive right-of-way existed since it had been lost by non-user for more than 10 years. Among the specific findings of fact and conclusions of law in that case, the District Court found that the defendant irrigation district had not fulfilled its lawful obligation to deliver water to the Blomes by delivering water at only one point on the southeast corner of the Blome property.

This action in mandamus was filed in November 1977. On July 24, 1978, the District Court entered its peremptory writ of mandamus commanding the defendants to take the necessary action to deliver water to the highest point on the land of the plaintiffs "so as to allow the plaintiffs to irrigate all of said land by natural causes." The defendants have appealed.

The defendant irrigation district contends that the issuance of a writ of mandamus was improper in this case because the plaintiffs did not have a clear legal right to have water delivered to the highest point on their land.

Section 25-2156, R. R. S. 1943, provides in part: "The writ of mandamus may be issued to any inferior tribunal, corporation, board or person, to compel the performance of an act which the law specifically enjoins as a duty resulting from an office, trust or station."

The writ of mandamus is not a writ of right. Before a court is warranted in granting a peremptory writ, it must appear that the relator has a clear legal right to the performance of the duty by the respondent. To warrant the issue of mandamus against an officer to compel him to act, (1) the duty must be imposed on him by law, (2) the duty must still exist at the time the writ is applied for, and (3) the duty to act must be clear." State ex rel. Goetz v. Lundak, 199 Neb. 585, 260 N. W. 2d 589.

The principal purpose for the organization of an irrigation district is to furnish water for irrigation to all the landowners within the district upon fair and equitable terms and conditions. State, ex rel. Clark v. Gering Irrigation District, 109 Neb. 642, 192 N. W. 212.

By statute the board of directors for the district has the power and duty to "establish equitable by-laws, rules and regulations for the distribution and use of water among the owners" of the lands in the district. See § 46-120, R. R. S. 1943.

It is expressly provided by statute that all water distributed for irrigation purposes shall attach to and follow the tract of land to which it is applied; that it shall be the duty of the directors to make all necessary arrangements for right-of-way for lateral "to each tract of land subject to assessment," including the exercise of the power of eminent domain; and to make such rules in regard to the payment for such right-of-way as may be just and equitable. See § 46-122, R. R. S. 1943.

The authorities establish that mandamus is a proper remedy in the present case, and that an irrigation district has a duty to procure the necessary right-of-way and deliver water to each tract of land subject to assessment on fair and equitable terms and conditions.

The defendants also contend that the plaintiffs have lost the water rights attached to the land involved here because they did not take any water from the irrigation district for a continuous period of more than 10 years prior to 1968. The only statutory ground upon which an irrigation district can provide for suspension of water delivery to land in its district is nonpayment of irrigation taxes for 2 years. See § 46-122, R. R. S. 1943.

The Department of Water Resources has original and exclusive jurisdiction to hear and adjudicate all matters pertaining to water rights for irrigation and

other purposes, including jurisdiction to cancel and terminate such rights. See, § 46-209, R. R. S. 1943; Hickman v. Loup River Public Power Dist., 173 Neb. 428, 113 N. W. 2d 617.

The record in this case indicates that proceedings were initiated before the Department of Water Resources attempting to secure cancellation of plaintiffs' water rights. There is no evidence that the Department of Water Resources ever suspended or canceled any of the water rights of the plaintiffs. It is also obvious that during all the years in question the defendant irrigation district was appropriating water under the water rights of the plaintiffs for distribution to all the landowners in the district. There is no evidence whatever that the water rights of the plaintiffs have been canceled, nor that the appropriation rights of the defendant irrigation district have been affected in any way because of the plaintiffs' failure to take delivery of water for a period of years. The defendant irrigation district has no power to cancel or terminate the water rights of the plaintiffs, nor can it suspend delivery of water, except for nonpayment of taxes and assessments as provided by statute and the by-laws of the district.

The critical issue in this case is whether or not it is fair and equitable to require an irrigation district to deliver water at more than one point on a 146-acre tract of land within the district. The defendants contend that an irrigation district cannot be required to deliver water at more than one point, even though delivery from that point will not irrigate all the irrigable land in the tract.

At the present time water delivered by the irrigation district at the southeast corner of the Blome land is used to irrigate only the eastern portion of the land. The evidence establishes that by constructing a ditch on the Blome land running northwesterly from the south center of the land to the west boundary, water delivered at the southeast

corner could also be used to irrigate the westerly portion of the land, except for approximately 12 acres in the southwest corner. The evidence also establishes that all the westerly portion of the land, including the 12 acres in the southwest corner, could be irrigated by delivery in the center of the south boundary at the point requested by the plaintiffs. The evidence also establishes that the surveying and leveling of the westerly portion of the land was done upon an understanding with the district that water would be delivered at the point in the center of the south boundary.

The defendants contend that more than one outlet on any tract of land constitutes a multiplicity of outlets and is forbidden by section 46-258, R. R. S. 1943. That section does not prohibit multiplicity of outlets, even if the section were applicable, but states only that they should be avoided. In any event, it is not part of the irrigation district act and does not affect the duty of the district to furnish water. If applicable at all, it only prescribes upon whom the duty to construct outlets rests. State, ex rel. Clark v. Gering Irrigation District, 109 Neb. 642, 192 N. W. 212.

There can be no doubt that all appropriations of water for irrigation purposes since 1895 are inseparable from and appurtenant to the specific land. United States v. Tilley, 124 F. 2d 850 (8th Cir., 1941). Section 46-122, R. R. S. 1943, provides that all water distributed for irrigation purposes shall attach to and follow the tract of land to which it is applied. If the plaintiffs' rights to receive irrigation water attach to the tract of land, those rights should be effective as to all the irrigable land and not merely part of it. It is clear that the Legislature intended that only land which could be benefited by an irrigation district was to be included within the district. See §§ 46-107 and 46-108, R. R. S. 1943. The entire tract owned by plaintiffs is included in the district and irrigation taxes have been paid on all the land, includ-

ing the 12 acres which cannot be irrigated from the southeast corner by natural causes. Defendants' position is that the request by Blome for delivery of water at the southeast corner to irrigate the eastern portion of the land constituted a waiver of a right to have water delivered at any other point or points to irrigate the remainder of the land. Defendants cite no authority in support of that proposition and the evidence fails to establish any waiver, explicit or implied, or any intention to waive any rights by the plaintiffs.

An irrigation district has a duty to deliver water to each tract of land subject to assessment, and the determination of whether one or more than one point of delivery to a tract is required must be made on a case-by-case basis. The point or points of water delivery reasonably required on any given tract of land must be determined upon the basis of what is just and equitable under the facts and circumstances of each case. The traditional concept that each tract of land is different is particularly significant here. The size of the tract; the elevations of possible points of delivery; the topography and the nature of the soil; the location and availability of alternative or additional sources of water supply; and the comparative advantages and disadvantages to the landowner and the irrigation district should all be considered in determining what is just and equitable in each case.

In the case now before us the trial court personally viewed the premises and determined that it was just and equitable to require the defendant irrigation district to deliver water to the highest point on plaintiffs' land in the center of the south boundary, in addition to the delivery of water at the southeast corner of the plaintiffs' land. An action in mandamus is a law action in which a jury trial on issues of fact is not demandable as a matter of right, and the finding of the District Court will not be disturbed by this

court on appeal unless clearly wrong. State ex rel. Goetz v. Lundak, 199 Neb. 585, 260 N. W. 2d 589.

The evidence in this case supports the findings of fact and conclusions of law of the trial court. The trial court's action in issuing the peremptory writ of mandamus was correct and is affirmed.

AFFIRMED.