STATE OF NEBRASKA EX REL. NEBRASKA STATE COUNCIL #32, AFSCME, APPELLEE, V. CITY OF HASTINGS, APPELLANT.

332 N.W.2d 661

Filed April 15, 1983. No. 81-778.

Michael E. Sullivan, for appellant.

Thomas F. Dowd of Dowd & Fahey Law Offices, for appellee.

KRIVOSHA, C.J., BOSLAUGH, McCOWN, WHITE, HASTINGS, and CAPORALE, JJ., and MORAN, D.J.

WHITE, J.

This case arises on a petition for writ of mandamus filed by relator-appellee, Nebraska State Council #32, AFSCME, to compel the respondent-appellant, City of Hastings, to withhold monthly

dues from the pay of city employees who are members of relator's union. The facts are not in dispute and the judgment of mandamus was issued on the pleadings.

Relator is the certified bargaining agent for a unit of employees of the City of Hastings, Nebraska. Relator, by its attorney, requested that pursuant to the requests signed by a number of the employees in the unit, the respondent deduct the sum of $10 per month from the pay of the requesting employees. The city refused and suit was filed.

Involved in this action is the interrelation of two statutes, Neb. Rev. Stat. § 48-224 (Reissue 1978) and § 48-816 (Cum. Supp. 1982).

Section 48-224 provides: "Any employee of the State of Nebraska, any municipal corporation, or any public body or agency created by the laws of this state, who desires to participate voluntarily in any employee organization, credit union, or any community charity or public welfare plan approved by the Governor and the Director of Administrative Services, in the case of employees of the State of Nebraska or by the duly elected governing body of such municipal corporation or other public body or agency, may execute an order authorizing the withholding from any wages or salary paid to such employee of a sum each month or pay period and the same to be paid to the designated recipient thereof."

Section 48-816 provides in part: "When an employee organization has been certified as an exclusive collective bargaining agent or recognized pursuant to any other provisions of this act, the appropriate public employer shall be and is hereby authorized to negotiate collectively with such employee organization in the settlement of grievances arising under the terms and conditions of employment of the public employees as provided in this act, and to negotiate and enter into written agreements with such employee organizations in determining

such terms and conditions of employment, including wages and hours."

The questions succinctly stated are (1) whether the certification of the relator establishes that the respondent has approved the relator, and (2) if the respondent has approved the relator, is there a mandatory duty to withhold dues and transmit them to relator under § 48-224?

At the time of the passage of § 48-224, 1967 Neb. Laws, Ch. 571, § 1, p. 1878, the political subdivisions of this state were not empowered to recognize and bargain with labor organizations as the exclusive collective bargaining agents of their employees. In 1969 the Legislature passed L.B. 15, which amended Neb. Rev. Stat. §§ 48-801 et seq. (Reissue 1968), granting such power to the state and its subdivisions. 1969 Neb. Laws, Ch. 407, p. 1405.

The amendment by the Legislature appears to have been in response to the decision of *American Federation of State, Co., & Mun. Emp. v. Woodward,* 406 F.2d 137 (8th Cir. 1969), which held that neither Nebraska's Constitution nor its statutes limited union membership to private employment. Therefore, public policy warranted its extension to public employment.

The relator argues that by virtue of its certification as the exclusive bargaining unit of its members and the fact that respondent already has bargained with it, the city has approved of it within the meaning of § 48-224. The relator maintains that once approval is obtained, § 48-224 is directive to the respondent to check off dues from its employees and remit them to relator.

However, before a court is warranted in granting a peremptory writ, it must appear that the relator has a clear legal right to the performance of the duty by the respondent. To warrant the issue of mandamus against an officer to compel him to act, it must be established that (1) the duty must be imposed upon him by law, (2) the duty must still exist

at the time the writ is applied for, and (3) the duty to act must be clear. *State ex rel. Blome v. Bridgeport Irr. Dist.,* 205 Neb. 97, 286 N.W.2d 426 (1979).

An examination of the legislative history shows that § 48-224 contemplated only formal approval by the city council and does not mention implied approval by bargaining or certification as alternatives, for the obvious reason that at the time of its passage, no provisions existed in the statutes for *any* type of approval for a public employee collective bargaining unit.

While there is no question that automatic dues checkoffs are the proper subject of collective bargaining, it does not follow, absent a direct command from the Legislature, that the City of Hastings must automatically allow a dues checkoff simply by certifying the union and agreeing to bargain with it.

We are unable to discern such a direct command or even one reasonably inferable from the statutes involved. Statutes are not open to construction as a matter of course. It is not our province to read meaning into a statute not warranted by the language. *Watson v. City of Omaha,* 209 Neb. 835, 312 N.W.2d 256 (1981).

In addition, upon a further reading of amendments to the statute, we note that the language in § 48-816 states in part: "To bargain in good faith shall mean the performance of the mutual obligation of the employer and the labor organization to meet at reasonable times and confer in good faith with respect to wages, hours, and other terms and conditions of employment, or any question arising thereunder, and the execution of a written contract incorporating any agreement reached if requested by either party, *but such obligation does not compel either party to agree to a proposal or require the making of a concession.*" (Emphasis supplied.) The amendment to § 48-816 was in effect at the time of this dispute, and it is certainly indicative of an existing legisla-

tive intent not to force collective bargaining concessions upon the parties by statute.

We therefore hold that the City of Hastings did not approve of the union within the meaning of § 48-224, and even if the city were to approve of the union formally by resolution, in the absence of a directive by the Legislature, the checkoff of dues is not mandatory but, rather, is a subject for collective bargaining.

The conclusions of law of the trial court were in error. The trial court's action in issuing the writ of mandamus is hereby reversed.

REVERSED.

KRIVOSHA, C.J., dissenting.

I must respectfully dissent from the majority opinion in this case. As the majority notes, to a large extent, the decision in this case is dependent upon an interpretation of Neb. Rev. Stat. § 48-224 (Reissue 1978), which provides: "Any employee of the State of Nebraska, any municipal corporation, or any public body or agency created by the laws of this state, who desires to participate voluntarily in any employee organization, credit union, *or* any community charity *or* public welfare plan approved by the Governor and the Director of Administrative Services, in the case of employees of the State of Nebraska or by the duly elected governing body of such municipal corporation or other public body or agency, may execute an order authorizing the withholding from any wages or salary paid to such employee of a sum each month or pay period and the same to be paid to the designated recipient thereof." (Emphasis supplied.)

It appears to me that a simple reading of that section makes a distinction between employee organizations and credit unions, on the one hand, and community charity or public welfare plans on the other. That is to say, it appears to me that a reading of the section in question makes it clear that deductions for employee organizations or credit

unions are mandatory when requested by an employee and only community charity or public welfare plans require approval. If that were not the case, then the sentence would have read, "who desires to participate voluntarily in any employee organization, credit union, community charity, or public welfare plan approved . . . ." By placing a comma and an "or" between "employee organization, credit union," on the one hand, and "any community charity or public welfare plan," on the other, it appears clear to me that the Legislature was limiting approval to the latter and not to the former. Such a distinction by the Legislature would appear to make sense. It is difficult to imagine how or why one would require approval by the Governor of a voluntary deduction to a credit union which has already been licensed by the State of Nebraska. On what basis could the Governor refuse to approve the deduction? One can imagine why the state might desire to grant the right to approve community charity or public welfare plans so as to avoid the expense of making deductions and payments to multiple charities both within and without the community. The arguments which support permitting approval for community charity or public welfare plans do not support a similar argument for either employee organizations or credit unions.

The majority argues that this right of "checkoff" is a matter which should be made a part of the bargaining process, but because both employee organizations and credit unions run together in the sentence and appear before the second phrase concerning community charity or public welfare plans requiring approval, one is at a loss to understand how employees, particularly those who have not sought certification, are to bargain with the Governor for approval on deductions for credit unions. I would have been inclined to hold that approval is limited to community charity or public welfare plans and does not apply to either employee

organizations or credit unions, and would have, therefore, granted the request for the peremptory writ.