WILLIAM NUSS ET AL., APPELLEES, V. PATHFINDER IRRIGATION DISTRICT, APPELLANT.

336 N.W.2d 584

Filed July 22, 1983. No. 82-331.

R. L. Gilbert, for appellant.

John F. Wright of Wright, Simmons & Selzer, for appellees.

KRIVOSHA, C.J., BOSLAUGH, McCOWN, WHITE, HASTINGS, CAPORALE, and SHANAHAN, JJ.

McCOWN, J.

This is an action in mandamus to compel the defendant, Pathfinder Irrigation District, to erect a bridge across an irrigation canal under the provisions of Neb. Rev. Stat. § 46-255 (Reissue 1978). The District Court granted a peremptory writ of mandamus and the irrigation district has appealed.

The plaintiffs own approximately 2,400 acres of land in Scotts Bluff County. The southerly portion of plaintiffs' land lies in Sections 11 and 12, Township 23 North, Range 54 West of the 6th P.M. The Highline Canal, operated by the defendant irrigation district, winds in a northwesterly direction across the extreme southwest corner of Section 12 and continues across the section line between Sections 11 and 12 in a westerly and then southwesterly direction across the southeast corner of Section 11. Except for the canal right-of-way, plaintiffs own all the land in Section 12, and all the land in Section 11 north of the canal. Sixty-three hundredths acres of plaintiffs' land in the southwest corner of Section 12 lies south of the canal.

The Highline Canal was constructed by the United States as an irrigation canal in the years between 1905 and 1912. In 1926, pursuant to federal law, the care, operation, and maintenance of the canal was transferred to the defendant, Pathfinder Irrigation District. The district has operated the canal since

1926, but title to the canal remains in the United States.

In 1953 the county placed a used bridge across the canal on the boundary line between Sections 11 and 12 a short distance north of the south boundary of the two sections, which connected plaintiffs' land north of the canal with plaintiffs' land to the south of the canal. The county also opened, graded, and has maintained a road running south of the bridge along the section line between Sections 11 and 12 and on south to connect with the county road system to the south.

Plaintiffs' predecessor in title constructed improvements on plaintiffs' land consisting of a house and corrals at a point approximately three-quarters of a mile north of the bridge in Section 11 close to the section line between Sections 11 and 12. In 1955 plaintiffs' predecessor built a road from the bridge north to the improvements. At that time it was the policy of the local school board that the county maintain any road on which a schoolbus traveled. The county maintained the road north of the bridge until 1962 when the last of the children living there had completed school. The county has not maintained the road north of the bridge since that time but has continued to maintain the road south of the bridge. The county highway superintendent testified that the county property stopped at the south right-of-way of the Highline Canal and that the bridge over the canal and the road running north to the improvements were not county property.

Plaintiffs purchased the property in 1971. In 1974 plaintiffs and the owners of the small portion of land in Section 11 to the west conveyed land located on the section line between Sections 11 and 12 to the county so that the county could construct a public road on the section line south of the bridge.

The only practical access to the plaintiffs' property north of the canal is by way of the bridge and the county road south of the bridge. There is no ac-

cess to the north or to the west. There is a road running north and south along the east side of Section 12, but it is separated from the improvements on plaintiffs' land by the Winter Creek Drain. Because of the terrain, soil conditions, flooding, and snow, a trail road to the east is dangerous and virtually impossible to drive over. There is also a Winter Creek Draw to the west of the improvements and both Winter Creek Draw and Winter Creek Drain intersect the Highline Canal to the west and to the east of the bridge. At these points siphons carry the canal water undergound so that drainage and flood water from the drain and draw will not wash out the canal. Although these siphons are possible passage points to plaintiffs' land to the south, they are ordinarily impassable to vehicles and it is necessary to cross over property owned by other persons in order to reach the public road south of the bridge.

Over the years all sorts of vehicular traffic, including livestock trucks, have used the bridge in going to or coming from the improvements on plaintiffs' ranch. Sometime in 1981 a propane truck broke through the bridge, and since that time the bridge has been unsafe for anything but light traffic.

Plaintiffs asked the defendant to replace the bridge but the defendant refused. On October 19, 1981, the plaintiffs filed this proceeding for a writ of mandamus to compel the defendant to install a bridge, alleging that the bridge was necessary for the free and convenient use of plaintiffs' land on both sides of the canal. The defendant denied that it was in control of the canal and denied that the bridge was necessary for the free and convenient use of plaintiffs' lands.

Trial was had to the court and the court inspected the premises and took the matter under advisement. On April 15, 1982, the District Court found that the defendant irrigation district was in control of the canal and that the canal separates lands of the plaintiffs. The court also found that the trail road to the

east is dangerous, virtually impossible to drive over in good weather and impossible in rain or snow; the crossover of defendant's canal to the east of defendant's bridge is not possible at all because of terrain and soil conditions; and the crossover to the west of the bridge is not passable for large vehicles such as trucks, not suitable as a road, and is subject to flooding from Winter Creek Drain. The court also found that plaintiffs have no free and convenient access to their lands separated by the canal except by use of a bridge over the canal. The District Court specifically found that it was necessary for the free and convenient use of plaintiffs' land on both sides of defendant's canal that the defendant erect a substantial and convenient bridge across its canal at the present site of the old bridge, and issued a writ of mandamus accordingly. The defendant has appealed.

Section 46-255 provides in part: "Any person, constructing a ditch or canal through the lands of another, having no interest in such ditch or canal, shall build such ditch or canal in a substantial manner so as to prevent damage to such land. In all cases where necessary for the free and convenient use of lands on both sides of the ditch or canal by the owner or owners of such lands, the owner or those in control of such ditch shall erect substantial and convenient bridges across such canal or ditch . . . ."

This court has held that mandamus is a proper remedy to compel those in control of a canal to erect a substantial bridge or bridges across the canal, and that the statute applies in all cases, whether the lands were owned by the owner at the time the canal was built or were subsequently acquired by purchase, where the tracts lying on different sides of the canal together constitute one farm or ranch. *State ex rel. Johnson v. Central Neb. Public Power & Irrigation Dist.*, 140 Neb. 471, 300 N.W. 379 (1941); *State ex rel. O'Shea v. Farmers Irrigation District,*

98 Neb. 239, 152 N.W. 372 (1915), *aff'd* 244 U.S. 325, 37 S. Ct. 630, 61 L. Ed. 1168 (1917).

The defendant contends that it is not in control of the canal because the title to the canal remains in the United States. Although it is clear that title to the canal remains in the United States, it is also clear that for present purposes, and under the terms of the statute, the defendant is in control of the canal and subject to the requirements of § 46-255.

The federal statute under which the defendant took over the operation of the canal provides: "Whenever any legally organized water-users' association or irrigation district shall so request, the Secretary of the Interior is authorized, in his discretion, to transfer to such water-users' association or irrigation district the care, operation, and maintenance of all or any part of the project works, subject to such rules and regulations as he may prescribe." 43 U.S.C. § 499 (1976). See, also, 43 U.S.C. § 500 (1976).

The contract between the defendant and the United States under which the canal and its works were transferred to the defendant by the United States in 1926 provides that the defendant take over the "care, operation, and maintenance" of the canal and that the "operation, maintenance, and control of said transferred works [shall] be without expense to the United States."

The project manager for the Bureau of Reclamation testified that the operation, management, and control of the canal had been given to the defendant by the United States and that the United States retained only the authority to review the defendant's maintenance of the canal to make sure that it was adequate. The bureau had no objection to the construction of a bridge so long as it did not interfere with the operation and maintenance of the canal.

The statutory language requires the owner *or those in control of such ditch* to erect bridges. The statutory language contemplates the exact situation existing in the present case. The statutes, the con-

tracts, and the past and present system of operation and maintenance all establish that the defendant has the requisite "control" of the canal and is not excused from compliance with the statute merely because the United States is the technical owner of the canal.

The defendant also contends that a bridge is not necessary for the free and convenient use of plaintiffs' land on both sides of the canal. The defendant maintains that the plaintiffs can use other routes but ignores the evidence that the other routes suggested by the defendant are virtually impassable for most of the year and that the turning radius and the road base at both siphon crossovers are inadequate to allow a loaded livestock truck to pass.

The District Court viewed the premises, including the bridge location and the alternate access points, and specifically found that plaintiffs have no free and convenient access to their lands except by use of the bridge and that it is necessary for the free and convenient use of plaintiffs' land on both sides of defendant's canal that the defendant erect a substantial and convenient bridge across the canal at the present site of the old bridge.

An action in mandamus is a law action in which a jury trial on issues of fact is not demandable as a matter of right, and the findings of fact by the District Court will not be disturbed by this court on appeal unless clearly wrong. *State ex rel. Blome v. Bridgeport Irr. Dist.*, 205 Neb. 97, 286 N.W.2d 426 (1979).

The judgment of the District Court was correct and is affirmed.

AFFIRMED.