INTERNATIONAL ASSOCIATION OF FIREFIGHTERS LOCAL 831, APPELLEE AND CROSS-APPELLANT, V. CITY OF NORTH PLATTE, LINCOLN COUNTY, NEBRASKA, APPELLANT AND CROSS-APPELLEE.

337 N.W.2d 716

Filed August 5, 1983. No. 82-379.

William A. Harding of Nelson & Harding, for appellant.

Baskins & Rowlands, for appellee.

KRIVOSHA, C.J., BOSLAUGH, McCOWN, WHITE, HASTINGS, CAPORALE, and SHANAHAN, JJ.

WHITE, J.

Defendant, City of North Platte, Nebraska (City), appeals from proceedings had before the Commis-

sion of Industrial Relations (CIR). The plaintiff, International Association of Firefighters Local 831 (Union), is the bargaining agent for employees of the fire department of the defendant City, excluding the chief and battalion commanders who are nonbargaining members. The Union alleged that an industrial dispute existed between the City and the employees of the fire department. The City in its answer admitted the truth of the allegation. After a hearing the CIR entered an opinion and order dated April 27, 1982, establishing wages for firefighters, emergency unit officers, captains, fire marshal aides, and a fire protection specialist. The CIR also altered the conditions of employment by ordering the City to implement a system of dues checkoff and to increase the clothing allowance. The City was also required to pay interest "from the date such increased wages should have been paid to the employees to the date of this Order."

The City argues that the CIR erred in (1) failing to grant the City's motion to dismiss because the Union failed to present a prima facie case of noncomparability; (2) reopening the hearing upon its own motion after the Union had rested and receiving additional evidence offered by the Union, because it constituted a second trial; (3) allowing the Union to use the City's expert witness to prove its case in chief; (4) its selection of the Union's array for comparability purposes; (5) its calculation of overall compensation; (6) rejecting the use of the City's economic variable deflator evidence; (7) granting the Union's application for an order nunc pro tunc; (8) ordering a union dues checkoff procedure; (9) granting the Union's request for temporary relief, since the postimpasse wage increase to nonunit employees did not constitute an unfair labor practice; and (10) ordering the payment of interest as part of its order. We affirm the order of the CIR in part and reverse in part.

In our review of orders and decisions of the CIR,

we are restricted to considering whether the order of that agency is supported by substantial evidence justifying the order made, whether it acted within the scope of its statutory authority, and whether its action was arbitrary, capricious, or unreasonable. *General Drivers and Helpers Union v. City of West Point*, 204 Neb. 238, 281 N.W.2d 772 (1979); *Metro. Tech. Com. Col. Ed. Assn. v. Metro. Tech. Com. Col. Area*, 203 Neb. 832, 281 N.W.2d 201 (1979).

The Union filed a petition with the CIR on August 24, 1981, which set forth two causes of action. In its first cause of action the Union alleged that an industrial dispute existed between itself and the City in regard to the negotiations of a new collective bargaining agreement. The Union also alleged that the scale of wages and conditions of employment lacked comparability to the prevalent scale maintained for the same or similar work of workers exhibiting like or similar skills under the same or similar work conditions.

In its second cause of action the Union alleged that on August 4, 1981, the City passed an ordinance whereby all nonunion city employees, including nonunion employees within the fire department, were granted a wage increase of 9.28 percent with longevity pay and that this action of the City constituted an unfair labor practice. The Union prayed for a temporary order prohibiting the City from implementing the wage increase and requiring the City to grant all members of the bargaining unit the 9.28 percent wage increase and applicable longevity pay.

A hearing was held on the Union's request for temporary relief on September 3, 1981. The CIR's temporary order did not enjoin the City from implementing the increases in wages and longevity pay to nonunion city employees, but did grant interest at 12 percent in the event its final order contained a wage increase or longevity pay for union members.

The City filed an amended answer which incorporated the defenses from its first answer that the pe-

tition failed to state a claim upon which relief could be granted and that the CIR was without jurisdiction. In addition, the City alleged in its counterclaim that wages and fringe benefits paid to bargaining unit personnel were above the prevalent scale and should be decreased.

The trial of this matter was commenced on October 23, 1981, during which counsel for the Union presented a three-city array consisting of Fremont, Norfolk, and Grand Island, Nebraska, to enable the CIR to determine if North Platte was below the prevalent wage scale. The Union originally intended to include Scottsbluff and Hastings, Nebraska, in its array, but the two cities had not reached an agreement with their respective fire departments at the time of trial. At the conclusion of the Union's case the City moved to dismiss on the ground that the Union's three-city array was insufficient to establish a prima facie case of wage noncomparability. The CIR overruled the City's motion, and the City presented evidence of economic variables with respect to the array presented by the Union. After the presentation of its evidence the City renewed its motion to dismiss. The CIR reserved ruling on the City's motion and recessed the hearing, to be reopened only upon motion of the CIR.

On January 20, 1982, the Union moved to reopen the hearing to allow further testimony. The Union alleged that both of the cities of Scottsbluff and Hastings had reached agreement with their fire departments. The City filed a motion in opposition to reopening the hearings. Both motions were overruled, but the CIR ordered, upon its own motion, that the hearing be reopened, and allowed the introduction of additional evidence. Both the City and Union were granted leave to present additional evidence.

A second pretrial conference was held, at which time the Union stated that it intended to call the City's expert witness at the hearing. The City then

filed a motion in opposition to the Union calling the City's expert witness, which was overruled by the CIR on March 9, 1982.

The hearing was reopened on March 10, 1982. The Union added the cities of Scottsbluff and Hastings to the array proposed before the hearing was recessed. The City proposed three arrays. The first array was identical to the Union's and consisted of wage comparisons between fire departments in Fremont, Grand Island, Hastings, Norfolk, and Scottsbluff, Nebraska. The second array was a 200-mile radius around North Platte which consisted of Scottsbluff, Columbus, Norfolk, Hastings, and Grand Island, Nebraska, and Hays, Kansas. The third array had a 225-mile radius consisting of Beatrice, Scottsbluff, Columbus, Norfolk, Hastings, Fremont, and Grand Island, Nebraska, Hays and Great Bend, Kansas, Cheyenne, Wyoming, and Greeley, Colorado.

At the conclusion of the hearing the CIR, based upon the Union's five-city array, ordered the wages for the union members increased, a dues checkoff system, an increase in clothing allowance for shift personnel, and interest to be paid from the date of the temporary order.

After the conclusion of the hearing the Union applied to the CIR for an order nunc pro tunc to correct the order of the CIR which failed to consider a uniform allowance for the fire marshal aide and fire protection specialist, who were not shift personnel but who were hourly personnel. On May 18, 1982, the CIR granted the Union's request of an order nunc pro tunc.

We find it unnecessary to address the City's first assignment of error in light of our rulings regarding its other assignments of error. We therefore will consider first whether the CIR erred. in reopening the hearing upon its own motion after both parties had rested, and allowing the introduction of additional evidence.

In *General Drivers and Helpers Union v. City of*

*West Point*, 204 Neb. 238, 281 N.W.2d 772 (1979), the trial between the parties had been closed when the CIR initiated and conducted its own investigation of the matter. In reversing the order and judgment of the CIR, we stated at 242, 281 N.W.2d at 775-76: "[T]he CIR's sole function is to settle industrial disputes, and the principal onus in producing evidence is on the parties. The adversary nature of proceedings has been preserved in the CIR by the Legislature in providing that proceedings shall conform to the code of civil procedure applicable to District Courts, section 48-812, R.R.S. 1943; by the decision of this court as to burden of proof, Lincoln Fire Fighters Assn. v. City of Lincoln, *supra*; and, for that matter, by the procedures adopted and followed by the CIR itself. The result is that the CIR cannot, in a section 48-818, R.R.S. 1943, case, obtain evidence on its own motion unless the moving party has first made a prima facie case by satisfying the burden of proof of establishing noncomparability with prevalent conditions. Therefore, we must disregard the evidence obtained by the CIR on its own motion and are left with findings not supported by substantial evidence, resulting in the entry of an unjustified order which is therefore arbitrary, capricious, and unreasonable."

It is within the sound discretion of a District Court in a civil case to allow a party to withdraw its rest and introduce additional evidence. *Meyer v. City of Grand Island*, 184 Neb. 657, 171 N.W.2d 242 (1969). The instant case is easily distinguished upon its facts from *General Drivers and Helpers Union v. City of West Point, supra*. The trial in *General Drivers* was completed when the CIR initiated and conducted its own investigation into the facts in contravention of the adversarial process. The CIR itself attempted to meet the association's burden of proof in *General Drivers*, and thereby failed to conform to the code of civil procedure. In the instant case the trial was merely recessed and was reopened pursuant to the

CIR's reservation of the right to do so on the record. Here, the parties themselves gathered and introduced further evidence and the reopening of the hearing was proper under the rules of procedure applicable in civil cases. Further, the Union's witnesses gave comprehensive descriptions of all the jobs within the fire department, stated wage information with reference to job descriptions, skills, and requirements, and provided evidence of fringe benefits paid by unions within the three-city array prior to the recess.

The City contends that the reopening of the hearing allowed the Union to correct the deficiencies in its case and that such action was inherently prejudicial. While we do not find it necessary to decide whether, in fact, the Union's proof was deficient or whether a three-city array was suitable because of our finding that the hearing was properly reopened, we note that the City was at all times prior to and at the time of trial aware of the fact that the Union intended to utilize a five-city array that had been used in prior CIR cases. The only reason the Union was not able to do so was a problem with Scottsbluff and Hastings not reaching a collective bargaining agreement before trial. The City refused to reveal the content of any of its arrays to the Union during contract negotiations. During trial the City rested shortly after the Union and did not introduce any of its arrays into evidence. The CIR reopened the hearing when Hastings and Scottsbluff had reached bargaining agreements. The City was not helpful in providing any information, and therefore the CIR did not abuse its discretion when it determined that under the circumstances reopening the case demonstrated itself to be indispensable to the merits and justice of the cause. See *Lewelling v. McElroy*, 148 Neb. 309, 27 N.W.2d 268 (1947).

The City also complains that the CIR erred in allowing the Union to call the City's expert witness to testify. We do not agree. After the CIR entered its

order of February 5, 1982, which reopened the hearing, the Union took the deposition of James Jensen, the City's expert witness in Denver, Colorado. Testimony from that deposition indicated that Mr. Jensen possessed relevant information regarding prevalent wages and fringe benefit rates. Accordingly, the Union announced at the pretrial conference held on March 2, 1982, that it wished to call the City's expert witness as a witness in its case in chief. After objection by the City the CIR entered an order allowing the Union to call the City's expert as its own witness. Neb. Rev. Stat. § 27-402 (Reissue 1979) states that "all relevant evidence is admissible" except as excluded by federal or this state's statutes or Constitution. Similarly, Neb. Rev. Stat. § 27-501 (Reissue 1979) states that no person has the privilege to "(1) Refuse to be a witness; or (2) Refuse to disclose any matter; or (3) Refuse to produce any object or writing; or (4) Prevent another from being a witness or disclosing any matter or producing any object or writing."

This court is unaware of any Nebraska cases involving the compelling of an expert witness to testify, nor has either party cited us to any such case. We therefore look to other jurisdictions and note that there is a conflict of authority as to when and under what circumstances an expert witness retained by one party may be compelled or will be allowed to testify to a matter of opinion upon request of the opposing party. See the annotation on the topic of compelling experts to testify in 77 A.L.R.2d 1182 (1961).

In a case very similar to the facts in this case, the Supreme Court of South Dakota in *State Highway Commission v. Earl*, 82 S.D. 139, 143 N.W.2d 88 (1966), reversed the trial court ruling which had precluded the state from eliciting the opinion testimony of the landowners' appraiser. In so holding, the South Dakota court stated at 142, 143 N.W.2d at 89: "It is generally held to be the duty of every citizen to

respond to a subpoena. No distinction, in this respect, exists between an ordinary and an expert witness. Nor can the expert demand compensation beyond ordinary witness fees as a condition precedent to his attendance. 8 Wigmore, Evidence, § 2203, p. 140. Also, ordinary and expert witnesses may be compelled to testify, unless privileged, to any relevant factual matter within their knowledge, but it is beyond the duty of a witness to make preliminary preparations, perform professional services, make scientific tests, or listen to testimony in order to qualify or testify as an expert.''

The South Dakota court conducted an overview of all the conflicting cases on the subject and, in concluding that no privilege was available to prevent the testimony, stated: ''The purpose behind our attorney-client privilege is to encourage a client to freely communicate with his attorney without fear of disclosure. Obviously its protective mantle does not extend to an appraiser of real property. He is not an attorney and the appraisal process of inspecting property, examining public records, comparing sales, and applying knowledge, training and experience in forming an opinion of value does not involve a confidential 'communication made by the client'. The mere fact the expert may have communicated his opinion of value to either the attorney or client does not make it a privileged communication.

. . . .

''In the present action the expert appraisal witness employed by defendant was willing to testify for the State which offered to pay his expert witness fees and expenses. The fact he was previously employed by defendant to appraise the subject property did not create a contractual or proprietary right in either defendant or the expert to suppress or withhold from evidence this expert's formed opinion. He should have been allowed to testify under the circumstances. To deny it constituted reversible error.'' *Id.* at 147-48, 143 N.W.2d at 92-93.

In the instant case Mr. Jensen was not subpoenaed to testify at trial but appeared voluntarily. However, even if he had been subpoenaed, he was not called upon to make any additional investigation and was merely asked to express opinions he had already formed prior to the trial.

The trial performs a truth-seeking function in settling controversies between the parties. It runs contrary to that function to suggest that unfavorable evidence in the form of an expert's opinion may be kept from either party in the interest of justice and to prevent prejudice.

The City next argues that the CIR erred in selecting the Union's array for comparability purposes. From the evidence the CIR determined that a five-city array consisting of Fremont, Grand Island, Hastings, Norfolk, and Scottsbluff "is an appropriate array for the determination of this matter." The record contains substantial evidence that the units selected were sufficiently similar and had enough like characteristics or qualities to make comparison appropriate. See *Fraternal Order of Police v. County of Adams*, 205 Neb. 682, 289 N.W.2d 535 (1980). The contested five-city array was one of three selected for presentation to the CIR by the City. It is difficult for this court to determine how error can be assigned by the City when one of its proffered arrays was selected by the CIR for the determination of prevalent conditions. All of the experts at trial testified that the five-city array was sufficient for purposes of comparison, and we find no abuse of discretion.

The City also maintains that the CIR erred in its calculation of overall compensation because the evidence demonstrated that the City was above the prevalent scale in the payment of fringe benefits. We do not find this to be a correct reflection of the evidence with regard to the five-city array. Mr. Jensen computed a cash-cost benefit analysis of fringe benefits for the five-city array for the fire-

fighter position. His figures showed that it would take an increase in fringe benefits at the midpoint of $225.70 per year to reach comparability.

The CIR considered each fringe benefit separately from the evidence introduced by the parties at trial. While the CIR found that some fringe benefits offered by North Platte, such as life insurance premiums and floating holidays, were superior to those of other cities, it found some fringe benefits, such as the uniform allowance, were inferior. Therefore, the CIR ordered the City to increase the uniform allowance by $120 which was below the prevalent scale. We find the action of the CIR in this regard to be supported by substantial evidence and not arbitrary or unreasonable.

The City claims that the CIR erred in rejecting the use of economic variable deflator evidence offered by the City. In its decision the CIR stated that it was rejecting the evidence because the City did not establish any connection between median family income or per capita income and firefighter wages.

Dr. Jerome Sherman, a professor of finance at Creighton University, testified that all economic variables, such as wage levels, were tied up to either median family income or per capita income. Yet, on the City's exhibit 39, the city of Norfolk had the lowest median family income and the highest per capita income of the five-city array. We therefore agree with the CIR that no direct correlation was shown between per capita or median family income and firefighter wages.

The City next contends that the CIR erred in granting the Union's application for an order nunc pro tunc. We agree.

After the hearing had been concluded the Union applied for an order nunc pro tunc to correct the order of the CIR because it did not increase the uniform allowance for hourly personnel.

In the recent case of *Continental Oil Co. v. Harris*, 214 Neb. 422, 424, 333 N.W.2d 921, 923 (1983), we

stated that "the office of an order nunc pro tunc is to correct a record which has been made so that it will truly record the action had, which through inadvertence or mistake was not truly recorded. It is not the function of an order nunc pro tunc to change or revise a judgment or order, or to set aside a judgment actually rendered, or to render an order different from the one actually rendered, even though such order was not the order intended. An order nunc pro tunc cannot be used to enlarge the judgment as originally rendered or to change the rights fixed by it." The order nunc pro tunc enlarged the rights fixed by the CIR's order of April 27, 1982, by granting a uniform allowance to hourly employees of the fire department where none had previously been provided for. This portion of the order is reversed.

The City next contends that the CIR erred in ordering a mandatory dues checkoff. In *State ex rel. Council #32 v. City of Hastings*, 214 Neb. 20, 332 N.W.2d 661 (1983), we stated that there is no question that automatic dues checkoffs are the proper subject of collective bargaining. Here, the parties reached an impasse in negotiations. The CIR properly assumed jurisdiction of the industrial dispute, and its order of dues checkoff was within its statutory authority.

The City also argues that the CIR erred in granting the Union's request for temporary relief, since the postimpasse wage increase to nonunit employees did not constitute an unfair labor practice.

This case constitutes one of the more flagrant examples of bad faith bargaining by a city with its employees.

Neb. Rev. Stat. § 48-819.01 (Cum. Supp. 1982) provides that when a party to an industrial dispute does an act which interferes with, restrains, or coerces employees in the exercise of their rights under Neb. Rev. Stat. § 48-837 (Reissue 1978), the CIR has authority to enter "such temporary or permanent or-

ders as the commission may find necessary to provide adequate remedies to the injured party or parties, to effectuate the public policy enunciated in section 48-802, and to resolve the dispute."

Section 48-819.01 was enacted as a result of our decision in *University Police Officers Union v. University of Nebraska*, 203 Neb. 4, 17-18, 277 N.W.2d 529, 537 (1979), where we held that the CIR had no authority "to make findings with regard to unfair labor practices or direct a public employer to take any more action than is necessary to preserve and protect the status of the parties' property and public interest involved pending final determination of the issues."

The record reveals that the City was dilatory throughout negotiations, while the Union made a good faith effort to bargain. The City refused to show the Union any of its comparability pay figures, and while negotiations were in progress the City enacted a 9.28-percent across-the-board wage increase to nonunion employees of the type disfavored by this court in *AFSCME Local 2088 v. County of Douglas*, 208 Neb. 511, 304 N.W.2d 368 (1981), *supp. op.* 209 Neb. 597, 309 N.W.2d 65 (1981). The pay raise was given to nonunion employees of the fire department both above and below the ranks of the union members but narrowly avoided raising the salary in the same classification.

The City was well aware of the impact of its actions, as evidenced by the answer of Richard Grady, the North Platte city administrator, to questions propounded to him at trial. "Q. Now, were there discussions during that meeting especially from Councilman McGuire who was on the City negotiating team for this year attempting to arrive at an agreement with the fire union regarding the possibility that the City could be subject to an unfair labor practice lawsuit if the City gave nonunion employees an across-the-board 9.28 percent increase? A. Yes, I believe there was. Q. And is it fair to say that

Councilman McGuire brought it to the whole Council's attention that he had been advised by the City's attorney that they were leaving themselves wide open for an unfair labor practice lawsuit if the across-the-board increase was given to nonunion City employees, in the general terms as what you said? A. Yes. Q. And notwithstanding that discussion and the apprehension by Councilman McGuire, the City Council did go ahead and grant the 9.28 across-the-board increase for nonunion employees plus longevity pay and gave the Fire Department union no increase? A. Yes."

The City was aware of the fact that members of the Union were at least entitled to an 8-percent increase in salary based on an informal telephone survey of comparability pay. The actions of the City constitute an attempt to force the Union to accept less than they were entitled to because they were members of a bargaining unit. The award of interest was therefore highly appropriate in this instance and within the statutory authority of the CIR under § 48-819.01.

We find the Union's assignments on cross-appeal to be without merit.

The order of the CIR is affirmed in part and reversed in part.

AFFIRMED IN PART, AND IN PART REVERSED.