DOLAN PETERSON ET AL., APPELLANTS, V. GERING IRRIGATION DISTRICT ET AL., APPELLEES.

363 N.W.2d 141

Filed February 15, 1985.   No. 83-366.

Dennis L. Arfmann, for appellants.

Steven C. Smith of Van Steenberg, Brower, Chaloupka, Mullin & Holyoke, for appellees.

KRIVOSHA, C.J., BOSLAUGH, WHITE, HASTINGS, CAPORALE, SHANAHAN, and GRANT, JJ.

BOSLAUGH, J.

This case arises out of a controversy concerning the delivery of irrigation water by the defendant Gering Irrigation District (hereinafter defendant) to the plaintiffs' land. Three directors of the irrigation district were joined as additional parties to the suit.

The plaintiffs, Dolan and Arlene Peterson and Greg and Ann Peterson, own approximately 230 acres of land in Scotts Bluff County, Nebraska. The land is a rectangular tract which

lies adjacent to and north of the defendant's canal. The land slopes generally from the south to the north. The highest elevation on the plaintiffs' land is 98.00 feet.

In a prior case between these same parties, the plaintiffs obtained a writ of mandamus which required the defendant district "to deliver unto relator's land at the 98.00 level, which is the high point of relator's land, that volume of water to which the relator's land is legally entitled . . . ."

This action was commenced to enjoin the defendants from interfering with the plaintiffs' irrigation distribution system. The petition alleged that the defendants had wrongfully removed an irrigation distribution box plaintiffs had built upon their land and that the defendants had wrongfully entered plaintiffs' land to construct a device to measure the flow of water. The defendants filed a counterclaim seeking an order requiring the plaintiffs to remove an irrigation distribution box they had installed. The defendants also sought determination of the parties' rights and obligations concerning the construction, placement, and elevation specifications of the plaintiffs' distribution box and of its own measuring devices. In their reply and answer to defendants' counterclaim, plaintiffs alleged they were not receiving delivery of their proper, legal, and statutory amount of water. Plaintiffs also asked for a determination of the relative rights and obligations of the parties.

After hearing the evidence and viewing the premises, the trial court found that the defendant was properly delivering irrigation water to the plaintiffs' land and that the plaintiffs were not entitled to an injunction, and enjoined the plaintiffs from interfering with the measurement and delivery of irrigation water to the plaintiffs' land.

There are many conflicts in the evidence. Since this is an action in equity, it is reviewed de novo by this court. *Northport Irr. Dist. v. Jess*, 215 Neb. 152, 337 N.W.2d 733 (1983). Where the evidence is in conflict, we give consideration to the fact that the trial court observed the witnesses and their manner of testifying and accepted one version of the facts rather than the opposite.

There is no contention in this case that the plaintiffs did not

receive their fair allotment of irrigation water. The evidence is that during the growing season in question, the plaintiffs did not request delivery of all of the water to which they were entitled. The principal issue in this case is whether the defendant should be required to deliver water to the plaintiffs' land at a higher surface elevation.

The record shows that irrigation water is supplied from the defendant's canal and to the plaintiffs' land through a turnout consisting of a 12-inch metal pipe with a slide gate or headgate over the open end which permits the defendant to control the flow of water from the canal onto the plaintiffs' land.

The plaintiffs have installed several different receiving structures at the turnout over the years. The first receiving structure was a steel box; its purpose was to collect the water received from the canal and channel the water into the plaintiffs' irrigation system. Since that time, the plaintiffs have removed and installed several different concrete receiving structures. The plaintiffs have used a number of different irrigation methods, ranging from gravity to a sophisticated mechanical system known as a "Lockwood HydraLinear."

In June of 1981 the defendant installed a measuring device known as a "Cipolletti weir" at the turnout on the plaintiffs' land. Water now flows from the canal through the turnout into a 9- by 8- by 4-foot concrete structure. The water contained in this structure is the "weir pool." Water flows out of the weir pool through the weir, which is a metal plate with a U-shaped or trapezoidal opening. The opening in the weir plate or blade is approximately 3 feet wide and 2 feet deep, with a vertical scale affixed to the blade near the opening. As water flows through the weir, it is possible to determine the volume of water by reading the scale. In order to get an accurate reading, water must fall over the weir blade into a basin with a lower elevation. The difference in elevation between the flow line of the weir and the floor of the receiving basin must be at least .2 feet. If there is no fall, any reading on the scale is simply that of immobile or backed-up water. Currently, the elevation or flow line of the weir blade is 98.18 feet.

After the weir was installed the defendant determined that the elevation of the floor of the plaintiffs' receiving structure or

basin was above the high point of the land. Because water flowed directly over the weir blade into the receiving structure, it was impossible for the water to fall the necessary .2 feet in order to be accurately measured. When the plaintiffs refused to alter their receiving structure, the defendant removed it. The plaintiffs have now installed a new receiving structure.

The plaintiffs contend that they are entitled to receive water at an elevation higher than the high point of the land. In order for this to be accomplished, the defendant would have to raise the elevation of the weir blade and place structures or "checks" in the canal so as to raise the level of the water in the canal. The plaintiffs contend there is not enough "head," or force, when the water enters their land for gravity irrigation to be successful. Specifically, the plaintiffs point to a remote portion of land east of the turnout, and referred to as station 3800, which has an elevation of 97.7 feet.

The defendants, on the other hand, contend that it is their duty only to deliver water at the elevation of the high point of the land, that plaintiffs can successfully irrigate with water delivered at that elevation, and that to deliver the water at a higher level would jeopardize the canal.

At the time of trial the plaintiffs irrigated with the hydralinear, and also gravity irrigated using gated pipe. To remove silt from the water before its use by the hydralinear, the plaintiffs constructed two "settling ponds," or pits, near the turnout. The water was then pumped from the pits through underground pipes from the settling ponds to structures called "risers" on the plaintiffs' land. The hydralinear would travel up and down the field attaching itself to the risers, from which it would draw water for irrigation. In order to reach land not traveled by the hydralinear, the plaintiffs channeled water through gated pipes.

Dolan Peterson testified that many times the hydralinear system would shut down automatically because there was not sufficient water with which to operate. He further testified that there were also periods during which there was not sufficient water to gravity irrigate.

Kevin Prior, an engineer, testified as an expert witness for the plaintiffs. It was his opinion that the plaintiffs could properly

irrigate their land if the weir blade were raised to an elevation of 99.5 feet and the canal were checked to an elevation of 100.45 feet.

On the other hand, the defendants' evidence was that the plaintiffs can properly irrigate their land with water delivered at an elevation of 98.00 feet. Walter L. Trimmer, an irrigation engineer employed by the Lockwood Corporation, and who designed the pipeline used with the hydralinear on the Peterson land, testified that the minimum requirement for the defendant was to deliver water to the plaintiffs' land at a water surface elevation of 98.00 feet.

Larry McCaslin, an engineer called as an expert witness by the defendants, testified that water "delivered to the high point of the land, not above but to the high point of the land, would be satisfactory and would be acceptable practice in this case." Evidence introduced by the defendants, in the form of daily water reports kept by the Gering Irrigation District, showed that on numerous occasions throughout the irrigation season in which plaintiffs complained they were not receiving a proper delivery of water, the plaintiffs' receiving pits were flooded so that the weir could not measure the amount of water being delivered because the plaintiffs were actually backing up water into the canal. It was the defendants' contention at oral argument that "the problems of Mr. Peterson are of his own making."

Testimony by the expert witnesses makes it clear that the matter cannot be considered with reference to the plaintiffs' land alone. The original design and construction of the canal was for delivery of water at the surface elevation of the land and not at some point above that elevation. If the Gering Irrigation District were required to raise the plaintiffs' weir, the capacity of the canal would not allow the district to consistently deliver to the plaintiffs the water to which they are entitled without building a check in the canal. Furthermore, the district would be required to place checks at other locations throughout the district and raise the elevation of the banks of the canal. These changes would not only be costly but would make the canal susceptible to damage or overflow in periods of high waters, rains, etc., and also produce a shortage of water at the end of

the canal.

"The principal purpose for the organization of an irrigation district is to furnish water for irrigation to all the landowners within the district upon fair and equitable terms and conditions." *State ex rel. Blome v. Bridgeport Irr. Dist.*, 205 Neb. 97, 103, 286 N.W.2d 426, 431 (1979). In *Blome* the question presented was how many points of water delivery were reasonably required on any given tract of land. This court held that such a determination must be made on a case-by-case basis:

> The traditional concept that each tract of land is different is particularly significant here. The size of the tract; the elevations of possible points of delivery; the topography and the nature of the soil; the location and availability of alternative or additional sources of water supply; and the comparative advantages and disadvantages to the landowner and the irrigation district should all be considered in determining what is just and equitable in each case.

*Id.* at 106, 286 N.W.2d at 432.

We believe the record sustains a finding that the defendant district is delivering water to the plaintiffs' land in a fair and equitable manner. The expert witness McCaslin testified that it is in line with practical agricultural practices for irrigation water to be delivered at the elevation of the high point of the land. Once there, as long as the proper quantity is delivered, it is no longer the district's responsibility but, rather, the irrigator's responsibility to move the water to any other point on the land.

The placement of the weir at the high point of plaintiffs' land permits the defendant to comply with its statutory duty to measure the water flowing from its canals. Neb. Rev. Stat. § 46-260 (Reissue 1984). Although it is not impossible to do so, the evidence indicates that to raise the weir would hamper defendant's further duty to provide plaintiffs with the amount of water to which they are entitled. Neb. Rev. Stat. § 46-231 (Reissue 1984). The plaintiffs are receiving their proper appropriation of water, and the evidence is that their field can be successfully irrigated by gravity with water delivered at the elevation of the high point of their land. It cannot be denied that the plaintiffs would benefit, as would many other farmers, if

the water were delivered at a higher surface elevation. However, neither can it be denied that, under the facts of this case, the plaintiffs are being furnished water upon fair and equitable terms and conditions. See *Blome, supra*. See, also, *State, ex rel. Clarke, v. Gering Irrigation District*, 109 Neb. 642, 192 N.W. 212 (1923); *Farmers & Merchants Irrigation Co. v. Brumbaugh*, 81 Neb. 641, 116 N.W. 512 (1908).

The judgment is, therefore, affirmed.

AFFIRMED.